Estate of Cletus J. HOLLYWOOD, James C. Hollywood, D.B.N.C.T.A. and James C. Hollywood, Appellants

v.

FIRST NATIONAL BANK OF PALM-ERTON, First Union National Bank and Citizens Bank and Trust Company, Appellees

Superior Court of Pennsylvania.

Argued Feb. 25, 2004.

Filed Aug. 19, 2004.

Reargument Denied Oct. 27, 2004.

Joseph C. Hollywood, Easton, for appellants.

James A. Wimmer, Palmerton, for Citizens Bank, appellee.

Marianne J. Gilmartin, Scranton, for First Union National Bank, appellee.

Carl J. Poveromo, Scranton, for First Union National Bank of Palmerton, appellee.

Before: TODD, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this appeal, we consider whether the limitations periods established under Uniform Commercial Code (UCC) sections 3–118(g) and 4–406(f) apply mechanically to bar actions for conversion and related claims without regard to the alleged incapacity of the aggrieved party when the alleged conversion occurred. Plaintiff James C. Hollywood, Administrator of the Estate of Cletus J. Hollywood (the Estate), contends that mechanical application is neither required nor appropriate under such circumstances, and that the limitations periods should be tolled by the "discovery rule" until such time as the plaintiff's incapacity is lifted and he or she reasonably could have determined the underlying Code violation. The trial court disagreed and concluded that, regardless of the defendants' apparent violation of section 3–420, the applicable limitations periods could not be tolled absent a demonstration that the defendants had fraudulently concealed their conduct. We concur in the trial court's determination. Notwithstanding the alleged inability of plaintiff's decedent to discover the Code violations at issue, the plain language of the UCC counsels mechanical application of the respective statutes of limitation, making no allowance for importation of the discovery rule or any other principle of equitable tolling. Accordingly, we affirm the trial court's order granting summary judgment in favor of the defendants.

¶ 2 In this case, the Estate of Cletus J. Hollywood seeks to recoup from the defendant banks financial losses sustained by the Decedent at the hands of his daughter,

Mary Ann Andersen, who allegedly converted the Decedent's assets to her own use during a time when the Decedent was under her care and mentally unable to secure his own affairs. The Decedent's son, James C. Hollywood (Son), seeks, in addition, to recover individually on claims of Wrongful Interference with Testamentary Expectancies and the Right to Inherit under the Restatement (Second) of Torts, section 774B, citing the banks' collective failure to prevent Andersen's conduct. The trial court, the Honorable Roger Nanovic, summarized the occurrences underlying these claims as follows:

On January 27, 1999, Cletus J. Hollywood (the "Decedent"), 84 years of age, died testate.

   \*     \*     \*     \*     \*     \*

Decedent was survived by one daughter, Mary Ann Andersen, and two sons: James C. Hollywood and Joseph C. Hollywood.

Between April 12, 1987 and July 6, 1995, Decedent resided with his daughter Mary Ann and her husband, Daniel T. Andersen, at the Andersens' home in New Tripoli, Pennsylvania. During this time, Decedent's mental status progressively worsened: on September 1, 1987, Decedent sustained a closed head injury in a motor vehicle accident; on January 7, 1990[,] Decedent was admitted to a Texas hospital with a diagnosis of weakness/confusion, chronic atrial fibrillation, and febrile illness; on March 9, 1990, Decedent was diagnosed with the beginning stages of Alzheimer's disease; on July 6, 1995, Decedent was hospitalized for complications associated with dementia. Following hospitalization both at the Institute of Pennsylvania Hospital and the Lehigh Valley Hospital, and a brief stay at the Lehigh Manor Nursing and Rehabilitation Center, Decedent was discharged into the care of his son

James and daughter-in-law, Merle Hollywood, with whom he resided until his death. Decedent was never adjudicated incompetent.

Decedent's will, dated February 2, 1989, was probated in Carbon County on March 19, 1999. Decedent's son James C. Hollywood was duly appointed as Administrator D.B.N.C.T.A. of the Estate. While administering the Estate, the Administrator discovered that the Decedent's accounts at various financial institutions where Decedent had been a customer were either closed or substantially diminished during the time Decedent resided with the Andersens. Further inquiry revealed that checks drawn on the accounts were signed in Decedent's name by Mrs. Andersen.

On November 30, 2000, the Estate commenced suit, by writ of summons and complaint, against a number of banking and financial institutions. The Defendants, First National Bank of Palmerton ("First National") and First Union National Bank ("First Union"), were included in this original filing. The Defendant, Citizens National Bank ("Citizens"), was included in the amended complaint filed by Plaintiffs on December 8, 2000.

Trial Court Opinion, 6/19/03, at 1–3.

¶ 3 The allegations of the Amended Complaint, although factually intricate, focus on theories of unauthorized payment under UCC section 4–406, and negligent conversion under UCC section 3–420. The Estate alleges that First National, First Union, and Citizens (the Banks) paid checks on Decedent's accounts that had been forged by Mary Ann Andersen, and permitted Andersen to make unauthorized withdrawals from the Decedent's certificate of deposit accounts. The Estate alleges, in addition, that First Union allowed unauthorized advances on a line of credit

and allowed Andersen to abscond with the contents of the Decedent's safe deposit box, which included over 100 United States Savings Bonds and a collection of gold and silver coins. Son, in support of his Wrongful Interference claim, alleges that the banks' collective failure to monitor activity on the Decedent's respective accounts deprived him of a substantial inheritance to which he would otherwise accede under his father's will.

¶ 4 In response, all Defendants filed preliminary objections in the nature of a demurrer asserting, *inter alia*, that Son's individual assertions of Wrongful Interference with Testamentary Expectancies failed to state an actionable claim. Upon review, the Honorable John P. Lavelle, Senior Judge, ordered stricken Son's Wrongful Interference claims and ordered the Estate to file a more specific pleading of its remaining claims. The Estate filed a series of amendments and, ultimately, a Third Amended Complaint. The Defendants responded in New Matter that neither the Decedent nor anyone else had ever apprised them of the alleged forgeries and improper withdrawals and that more than one year had passed since the dates of their respective occurrences. The Defendants argued accordingly that the Estate's claims were barred by the one-year limitations period prescribed by UCC section 4–406(f). *See* 13 Pa.C.S. § 4406(f).

¶ 5 Following extensive discovery, First National, First Union, and Citizens each sought summary judgment asserting the one-year limitations period for payment of instruments on an unauthorized signature under section 4–406(f), the three-year limitations period for conversion under section 3–118(g), and the three-year "catch-all" period under section 4–111 for other claims under UCC Article 4. Upon review, Judge Nanovic found counts 1, 2, 5–11, and 14 of the Estate's Third Amended Complaint time-barred. The court determined, in addition, that the Estate's claims concerning unlawful removal of items from Decedent's safe deposit box arose from a bailment contract and, therefore, were barred by the statute of limitations on common law contract actions prescribed by section 5525 of Pennsylvania's Judicial Code. *See* 42 Pa.C.S. § 5525. Therefore, the court concluded that the Estate's Counts 3, 4 were also time-barred. The Estate now files this appeal raising the following questions for our review:

1. Did the trial Court, contrary to its prior ruling on applicable Preliminary Objections, err in ruling that the Uniform Commercial Code ... displaced and pre[-]empted common law control over the accrual of, running of, and tolling of the statute of limitations and erroneously apply a mechanical statute of limitations?

2. Did the trial Court err by not applying the discovery rule?

3. Did the trial Court grant summary judgement [sic] when there are genuine issues of material fact in dispute and violate the province of and function of the jury?

4. Did the trial Court err when it determined that causes of action accrued and were suable forthwith and immediately actionable for frauds and forgeries committed against a victim of Alzheimer's Disease during his mental incapacity?

5. Did the trial Court err by not applying the rule of *Peaceman v. PNC Bank, N.A.*, 16 Fiduc. Rep.2d 363 (C.P.Mont. 1996) which precludes the mechanical application of the statute of limitations applied in *Menichini v. Grant*, 995 F.2d 1224, 1229 (3d Cir.1993)?

6. Did the trial Court err by dismissing Plaintiffs' claims for wrongful interference with testamentary expectancies and

the right to inherit pursuant to the Restatement of Torts 2d § 774B pursuant to Defendants['] Preliminary Objections?

7. Did the trial Court abuse its discretion by erroneously determining material facts in controversy, determining material facts not of and unsupported by the record, by not viewing the record in the light most favorable to Plaintiffs, not accepting as true all well-pleaded facts plead by Plaintiffs, not giving Plaintiffs the benefit of all reasonable inferences from the facts plead, and not resolving any doubt as to material factual disputes against Defendants?

Brief for Appellant at 3.

¶ 6 Upon review of the foregoing Statement, we note that the Estate's recitation poses only two controlling legal issues, facets of which are variously focused in its seven questions. Significantly, neither of those two underlying issues has generated an extensive body of Pennsylvania caselaw. Questions 1, 2, 3, 4, 5, and 7 impugn the trial court's decision to grant summary judgment on the basis of a "mechanical" application of the controlling statutes of limitation without allowance for equitable tolling as provided by the discovery rule. Although multiple states have so applied the limitation periods at issue, the Supreme Court of Pennsylvania has made no pronouncement on this controlling issue. Nevertheless, the United States Court of Appeals for the Third Circuit has predicted that, if faced with the issue, our Supreme Court would decline to apply the discovery rule in this context, opting instead for the "mechanical" application followed in the majority of other jurisdictions. *See Menichini v. Grant,* 995 F.2d 1224, 1231 (3d Cir.1993). To promote judicial economy, we shall address the Estate's related questions together by reference to this single issue. Question 6 challenges the court's decision to grant the Defen-

dants' demurrer to Son's individual claims of Wrongful Interference with Testamentary Expectancies and the Right to Inherit. Because the trial court disposed of the Wrongful Interference claim in response to a demurrer rather than on summary judgment, we shall address the Estate's Question 6 before proceeding to the remaining issues that the court later addressed on summary judgment.

¶ 7 "[A] demurrer is a preliminary objection that the pleadings fail to set forth a cause of action upon which relief can be granted *under any theory of law." McNeil v. Jordan,* 814 A.2d 234, 238 (Pa.Super.2002), *petition for allowance of appeal granted,* 575 Pa. 703, 837 A.2d 1178 (2003) (Table). "[A demurrer] admits, for the purpose of testing the sufficiency of the complaint, all properly pleaded facts, but not conclusions of law." *Id.* (quoting *Balsbaugh v. Rowland,* 447 Pa. 423, 290 A.2d 85, 87 (1972)). Thus, when reviewing such claims "our scope of review is plenary and our standard of review mirrors that of the trial court." *Homziak v. G.E. Capital Warranty Corp.,* 839 A.2d 1076, 1079 (Pa.Super.2003). Accepting all material averments as true, we must determine "whether the complaint adequately states a claim for relief under any theory of law." *Id.* (citation omitted). "Where any doubt exists as to whether a demurrer should be sustained, it must be resolved in favor of overruling the demurrer." *Mistick, Inc. v. Northwestern Nat'l Cas. Co.,* 806 A.2d 39, 42 (Pa.Super.2002).

¶ 8 In this case, the trial court granted the Banks' demurrers and dismissed Son's individual claim for Wrongful Interference with Testamentary Expectancies. Son makes no express claim that the trial court erred; rather, he suggests that various policy considerations counsel this Court to expand the definition of the tort in Pennsylvania to encompass instances of dissipa-

tion of a decedent's estate during life as provided by the Restatement (Second) of Torts. Brief for Appellant at 46–47 ("This court should follow the overwhelming majority of the jurisdictions and adopt the Restatement 2d § 744B's definition of the emerging tort of wrongful interference with testamentary expectancies and the right to inherit ...."). Son argues further that we should reinstate his claim and grant him the right to a trial to prove the Banks' liability under this expanded definition. We find these assertions unavailing.

■ ¶ 9 Our Courts have recognized a cause of action for Wrongful Interference with Testamentary Expectancies since 1904. *See Marshall v. De Haven*, 209 Pa. 187, 58 A. 141 (Pa.1904) (*per curiam*). However, unlike the majority of courts that have considered the issue, we have limited the parameters of potential claims to instances involving demonstrable interference with the testamentary scheme enshrined in a decedent's will. *See Cardenas v. Schober*, 783 A.2d 317, 326 (Pa.Super.2001) (citing *Marshall*). By contrast, the more general formulation of the Restatement would allow claims arising under a variety of circumstances when the tortfeasor's conduct deprives another of a beneficial interest in a gift or inheritance. The Restatement defines the tort as follows:

§ 744B Intentional Interference with Inheritance or Gift.

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

RESTATEMENT (SECOND) OF TORTS § 744B (1979).

¶ 10 Comments to the Restatement document the drafters' understanding that this section extends the principle underlying liability for intentional interference with prospective contracts stated in Restatement (Second) section 766B to non-contractual relations. *See id.* § 744B cmt. a. Thus, its language prescribes liability for tortious acts that diminish an inheritance or gift, and is not restricted to interference with a testator's existing will. *See id.* cmt. b. Eleven states have adopted this formulation. *See DeWitt v. Duce*, 408 S.2d 216 (Fla.1981); *Minton v. Sackett*, 671 N.E.2d 160 (Ind.App.1996); *Nemeth v. Banhalmi*, 99 Ill.App.3d 493, 55 Ill.Dec. 14, 425 N.E.2d 1187 (1981); *Huffey v. Lea*, 491 N.W.2d 518 (Iowa 1992); *Plimpton v. Gerrard*, 668 A.2d 882 (Me.1995); *Estate of Doyle v. Doyle*, 177 Mich.App. 546, 442 N.W.2d 642 (1989); *Hammons v. Eisert*, 745 S.W.2d 253 (Mo.App.1988); *Doughty v. Morris*, 117 N.M. 284, 871 P.2d 380 (App. 1994); *King v. Acker*, 725 S.W.2d 750 (Tex. App.1987); *Harris v. Kritzik*, 166 Wis.2d 689, 480 N.W.2d 514 (App.1992).

■ ¶ 11 Pennsylvania is among five states that recognize a similar cause of action. However, unlike Restatement section 744B, our law does not provide grounds for recovery on the basis of *inter vivos* transfers alleged to diminish an eventual bequest. Rather, we have limited the parameters of potential claims to instances involving demonstrable interference with the testamentary scheme the decedent had sought to create by making changes in an existing will. *See Cardenas*, 783 A.2d at 326 (citing *Marshall*). Our caselaw prescribes the elements of the tort as follows:

> (1) The testator indicated an intent to change his will to provide a described benefit for plaintiff,

(2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will,

(3) The defendant was successful in preventing the execution of a new will; and

(4) But for the Defendant's conduct, the testator would have changed his will. *Cardenas,* 783 A.2d at 326 (citing *Marshall* ); *see also McNeil,* 814 A.2d at 238. Thus, our law requires that to establish ground for recovery under this cause of action, a plaintiff must demonstrate the decedent had sought to make changes in his will to plaintiff's benefit, and that the defendant, through means of fraud, misrepresentation, or undue influence thwarted the decedent's intent.

■ ¶ 12 Given the relatively narrow circumstances to which this cause of action may apply, we cannot conclude that the trial court erred in granting the defendants' demurrers, as Son asserts in Question 6. To support his claim, Son relies on the following allegation:

James C. Hollywood had a legitimate valid testamentary expectancy of inheriting from Decedent which testamentary expectancy and right to inherit from Decedent was intentionally interfered with by the wrongful, tortious, and unauthorized actions of Defendants which wrongful, tortious, and unauthorized actions of Defendants directly and proximately caused him to suffer substantial economic damages on January 27, 1999[,] the loss of his testamentary expectancy, the loss of his right to inherit, and the loss of his inheritance which losses were directly and proximately caused by repeated and continuous breaches of and violations of duties owed by Defendants to Decedent and his heirs.

Brief for Appellant at 44. Neither this allegation nor any other in Son's series of amended complaints offers grounds that, if

accepted as true, would show that any of the named defendants acted to Son's detriment to thwart the decedent's intent to change his will. Consequently, they provide no basis for recovery under the wrongful interference tort recognized in Pennsylvania. Moreover, even were we to examine Son's allegations in light of the language of the Restatement, we would be compelled to reach the same conclusion, as Son offers no discussion of intentional conduct ascribed to the Banks that might satisfy the corresponding element under the Restatement. *See* RESTATEMENT (SECOND) OF TORTS § 744B (1979) (prescribing cause of action against "[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift"). Where, as here, the facts alleged suggest mere negligence, such an omission is critical. We conclude, accordingly, that the trial court did not err in granting the defendants' demurrers to Son's individual claim of Wrongful Interference with Testamentary Expectancies.

¶ 13 In the remaining questions, the Estate challenges the trial court's grant of summary judgment based on applicable limitations periods under the UCC. The Estate's Third Amended Complaint raises claims of conversion, cognizable under UCC section 3–420, and unauthorized payment, cognizable under common law breach of contract and UCC section 4–406. Because the Estate first commenced its action more than five years after the last of the subject checks had been paid, the court found them barred by the applicable one-and three-year limitations periods and granted summary judgment in favor of the Banks. In so ruling, the court rejected the Estate's assertion that the decedent's progressive mental decline and consequent victimization by his daughter, should require application of the discovery rule to

toll the statutes of limitations until the executor could reasonably have detected the improper withdrawals from the decedent's accounts. Trial Court Opinion, 6/19/03, at 15. In support of its conclusion, the court relied on the decision of the United States Court of Appeals for the Third Circuit in *Menichini*, 995 F.2d 1224, which predicted that our Supreme Court, if faced with similar circumstances, would decline to apply the discovery rule. The court opined further, that the policies of negotiability, finality, and uniformity underlying the UCC outweigh equitable considerations underlying the discovery rule and counsel mechanical application of the limitations periods at issue. Trial Court Opinion, 6/20/03, at 14–16.

> Our scope of review of an order granting summary judgment is plenary. *See Swartley v. Hoffner*, 734 A.2d 915, 918 (Pa.Super.1999). Accordingly, we apply the same standard as the trial court, reviewing all of the evidence of record to determine whether there exists a genuine issue of material fact. *See id.* In the absence of a factual dispute, we must discern whether the moving party is entitled to judgment as a matter of law. *See id.*

*Charles D. Stein Revocable Trust v. Gen. Felt Indus.*, 749 A.2d 978, 980 (Pa.Super.2000).

¶ 14 In this case, the Estate, in a brief spanning over 50 pages, argues that the UCC presumes application of "all supplemental bodies of law," and that, in *Menichini*, the Court of Appeals applied the Code too narrowly, in derogation of a contrary Code provision and caselaw applying it. Brief for Appellant at 17–23 (citing UCC § 1–103 and *N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345–46 (3d Cir.1982)). The Estate contends further that both the law of Pennsylvania and numerous decisions of the federal courts allow that a cause of action does not accrue where the aggrieved party is *non compos mentis* or suffers some other form of legal incapacity. Brief for Appellant at 29–33, 36–38. Should the cause of action accrue, however, the Estate argues further that the "supplemental bodies of law" contemplated by the Code include both the discovery rule and the closely allied doctrine of equitable tolling, which when applied, prevent the running of the statutes of limitations while an aggrieved party could not reasonably have ascertained the violation of his corresponding interests. Brief for Appellant at 38–42. Upon review, we conclude that none of these assertions establishes grounds for a finding of reversible error.

¶ 15 The Estate asserts causes of action under two sections of the UCC. The first, now numbered 3–420, provides for actions for the conversion of negotiable instruments, in pertinent part, as follows:

§ 3420. Conversion of instrument

(a) General rule.—The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

13 Pa.C.S. § 3420(a). This section, a modification of former section 3419, expands the circumstances under which a depositary or payor bank may incur liability for payment of unlawfully drawn or deposited instruments, but remains expressly applicable to instances in which the bank honors an instrument bearing a forged indorsement. *See id.*, cmt. 1 (1990). Accordingly, decisions addressing claims of conversion arising from forgery

under section 3419 remain applicable to interpretation of section 3420.

¶ 16 In *Menichini*, the Court of Appeals reviewed multiple section 3419 claims raised by a business owner against a depositary bank where an employee had deposited into her personal account checks payable to the business. 995 F.2d at 1227–28. The business owner sought to recoup from the bank all sums unlawfully paid, asserting that the bank had violated its duty under section 3419 to detect the employee's forged indorsement. *See id.* at 1228. In its defense, the bank interposed the applicable statute of limitations, contending that, notwithstanding its dereliction, the time elapsed between the presentation of the checks and the commencement of the plaintiff's action exceeded the two-year timeframe that then governed such claims in Pennsylvania. *See id.* at 1229 (concluding that because UCC did not state applicable limitations period on the dates of the 1988 deposits, the action would be governed by the statute of limitations prescribed by Pennsylvania's Judicial Code, 42 Pa.C.S. § 5524). The plaintiff countered that because the employee tortfeasor had taken measures to hide her activities, he could not have detected the individual conversions when they occurred. He reasoned accordingly that the cause of action should not accrue or the running of the limitations period should be tolled until he otherwise could have discovered the employee's conduct. *See id.*

¶ 17 Significantly, however, the plaintiff did not allege that the bank itself had engaged in any act of fraud or concealment. The Court characterized the issue accordingly as "whether, in a case involving conversion of negotiable instruments, the 'discovery rule' applies when a party not engaged in fraudulent concealment invokes the *statute* of limitations." *Id.* at 1228. Although the district court had ap-

plied the discovery rule, the Court of Appeals reversed. The Court found the discovery rule "inimical to UCC policies of [uniformity], finality, and negotiability," and determined that considerations of commercial efficacy outweighed "countervailing distributional concerns." *Id.* at 1230; *see also id.* at 1231 (quoting *Fuscellaro v. Indus. Nat'l Corp.*, 117 R.I. 558, 368 A.2d 1227, 1231 (1977) ("The finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends.")). Although the court was also careful to acknowledge the compelling equitable considerations underlying the rule, it found their appeal diminished in light of a greater public good to be served by strict application of the Code's limitations. *See Menichini*, 995 F.2d at 1230. Citing the Supreme Court of Iowa, the Court reasoned:

> As tempting a choice as [it] may be in an individual case [i.e. favoring "the rights of unsuspecting victims of forgery over the broader interest of the commercial world"], we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and "certainty of liability" advanced by the U.C.C.

*Id.* at 1230 (quoting *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476 (Iowa 1990)); *see also Husker News*, 460 N.W.2d at 478 ("We think the considerations of finality and predictability represented by the majority rule are substantial and outweigh the countervailing equities which led us to apply the discovery rule in other cases. The strength of our system

of commerce depends on a negotiable instrument law that is mechanical in application."). Thus, the Court predicted that "under Pennsylvania law, in the absence of fraud by those invoking the statute of limitations, a cause of action for conversion of negotiable instruments accrues when, irrespective of the plaintiff's ignorance, the defendant wrongfully exercises dominion." *Menichini*, 995 F.2d at 1231. Accordingly, the Court followed "a clear majority of jurisdictions addressing the issue[,]" and rejected application of the discovery rule to claims of conversion. *Id.*

¶ 18 In so holding, the Court found guidance in section 4406, which prescribes the limitations period applicable to claims of unauthorized payment (breach of contract) based on a forged indorsement. Reviewing the former requirement of that section that a claim be commenced within three years following presentation of the forged check, the Court concluded that section 4406 "mandates 'mechanical' application of the statute of limitations notwithstanding the customer's failure to discover a forged indorsement within the relevant limitations period." *Menichini*, 995 F.2d at 1231. The Court explained "[t]he rationale is that the 'balance in favor of a mechanical termination of liability of the bank outweighs what few residuary risks the customer may still have.'" *Id.* (citation omitted). Comparing section 4406 to the limitations period applicable to claims of conversion, the Court reasoned "[h]ere too, in a conversion claim against a party not engaging in fraudulent concealment, the policies of finality and certainty are best achieved by applying the statute of limitations without the discovery rule exception." *Id.*

¶ 19 Since *Menichini*, other courts, too, have recognized the utility of mechanical application of statutes of limitations in the commercial arena. *See John Hancock Fin. Servs., Inc., v. Old Kent Bank,* 346 F.3d 727, 734 (6th Cir.2003) (predicting the Michigan Supreme Court would adopt mechanical application of statute of limitations for claims of conversion under UCC section 3–406 based on factors explained in *Menichini* and applied by the Michigan Court of Appeals in *Brennan v. Edward D. Jones & Co.,* 245 Mich.App. 156, 626 N.W.2d 917, 919 (2001)); *Gress v. PNC Bank, N.A.,* 100 F.Supp.2d 289, 292 (E.D.Pa.2000) (applying *Menichini* and concluding that "intended purpose [of § 3420] is to provide exclusive regulations to govern the unauthorized payment of negotiable instruments"); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614 (Tenn.2002).

¶ 20 In *Pero's Steak House,* the Tennessee Supreme Court considered the plaintiffs' claims of conversion expressly in light of the limitations period under UCC section 3–118. That section, adopted in both Tennessee and Pennsylvania, provides, in pertinent part, as follows:

§ 3118.   Statute of limitations

\*      \*      \*      \*      \*      \*

(g) Conversion, breach of warranty and other Division 3 actions.—Unless governed by other law regarding claims for indemnity or contribution, an action:

(1) for conversion of an instrument, for money had and received or like action based on conversion;

(2) for breach of warranty; or

(3) to enforce an obligation, duty or right arising under this division and not governed by this section; must be commenced within three years after the cause of action accrues.

13 Pa.C.S. § 3118(g); *see also id.,* cmt. 6 (1990). Building on the majority rule, the Tennessee Court concluded that the limitation period under section 3–118, like those in *Menichini* (42 Pa.C.S. § 5524) and

*Husker News* (Iowa Code § 614.1(4)), did not admit application of the discovery rule. The Court reasoned that, regardless of the plaintiff's ignorance of the unlawful conduct that eventually prompted his claim, the cause of action must accrue when the conduct occurs: "When the property converted is a negotiable instrument, the damage is done, and the tort is complete when the instrument is negotiated, regardless of the plaintiff's ignorance of the conversion." *Pero's Steak House,* 90 S.W.3d at 623. Although the Court acknowledged that "[n]ot applying the discovery rule may very well be harsh in certain cases," it recognized as well that the considerations of negotiability, certainty, and finality advanced by the majority rule do counsel its adoption:

> Negotiable instruments are intended to facilitate the rapid flow of commerce by providing certainty and finality in commercial transactions. These policies are best served by refusing to apply the discovery rule and by finding that the cause of action for conversion of negotiable instruments accrues when the instrument is negotiated. Of course, adoption of the majority rule also fosters uniformity, which is a fundamental objective of the Uniform Commercial Code[.]

*Id.* at 624. Similar considerations have prompted adoption of the majority rule by almost every jurisdiction to have considered the issue. *See, e.g., John Hancock Fin. Servs., Inc.,* 346 F.3d at 734; *Menichini,* 995 F.2d 1224, 1230–31 (3d Cir. 1993); *Kuwait Airways Corp. v. Am. Sec. Bank,* 890 F.2d 456, 461–63 (D.C.Cir.1989); *Stefano v. First Union Nat'l Bank of Va.,* 981 F.Supp. 417, 421 (E.D.Va.1997); *Haddad's of Ill., Inc. v. Credit Union 1 Credit Union,* 286 Ill.App.3d 1069, 222 Ill.Dec. 710, 678 N.E.2d 322, 325–26 (1997); *Husker News Co. v. Mahaska State Bank,* 460 N.W.2d 476, 477–78 (Iowa 1990); *Ins. Co. of N. Am. v. Mfrs. Bank of Southfield,* 127

Mich.App. 278, 338 N.W.2d 214, 216 (1983); *Smith v. Franklin Custodian Funds, Inc.,* 726 So.2d 144, 148 (Miss.1998); *Yarbro, Ltd. v. Missoula Fed. Credit Union,* 310 Mont. 346, 50 P.3d 158, 162–64 (2002); *Gerber v. Mfrs. Hanover Trust Co.,* 64 Misc.2d 687, 315 N.Y.S.2d 601, 603 (N.Y.Civ.Ct.1970); *Palmer Mfg. & Supply, Inc. v. BancOhio Nat'l Bank,* 93 Ohio App.3d 17, 637 N.E.2d 386, 389–91 (1994); *Fuscellaro,* 368 A.2d at 1231; *Wang v. Farmers State Bank of Winner,* 447 N.W.2d 516, 518 (S.D.1989); *Lyco Acquisition 1984, L.P. v. First Nat'l Bank of Amarillo,* 860 S.W.2d 117, 119 (Tex.App. 1993).

¶ 21 Having considered the weight of the foregoing authority and the sound rationale of *Menichini,* we conclude that the same factors recognized there counsel our adoption of the majority rule. *See Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pa.,* 469 Pa. 188, 364 A.2d 1331, 1335 (1976) (recognizing that decisions of sister states "are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive scheme like that contemplated by the Uniform Commercial Code"). Our sister states have recognized that the need for expedition in commercial transactions is best achieved by safeguarding negotiability and finality of negotiable instruments and assuring uniformity of applicable law across state boundary lines. We too recognize the primacy of these considerations. Accordingly, we adopt as our own the holding of the Tennessee Supreme Court that "the discovery rule does not apply to toll the statute of limitations for claims of conversion of negotiable instruments. In the absence of fraudulent concealment, such claims accrue and the statute begins to run when the instrument is negotiated." *Pero's Steak House,* 90 S.W.3d at 624. Thus, our decision, like

that in *Menichini,* "mandates 'mechanical' application of the statute of limitations notwithstanding the customer's failure to discover a forged instrument within the relevant limitations period . . . ." 995 F.2d at 1231. Hence, claims of conversion under UCC section 3–420 accrue upon negotiation of the forged instrument and the applicable limitations period under section 3–118 commences to run. *See Pero's Steak House,* 90 S.W.3d at 623.

¶ 22 A similar holding is compelled on the Estate's companion claims for unauthorized payment of checks drawn on the decedent's accounts. Although these claims sound in breach of contract, *see Hardex–Steubenville Corp. v. W. Pa. Nat'l Bank,* 446 Pa. 446, 285 A.2d 874, 876 (1971), they arise from the payment of negotiable instruments otherwise governed by UCC Article 4. Accordingly, the Code provides a foreshortened limitations period of one year:

§ 4406. **Duty of customer to discover and report unauthorized signature or alteration**

\* \* \* \* \* \*

(f) **Statutes of limitations applicable to customer.**—Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

13 Pa.C.S. § 4406(f). For the same reasons that counseled our rejection of the discovery rule in the context of conversion claims under section 3–118, we reject the rule in this context as well. Regardless of the legal theory by which the plaintiff asserts his injury, the countervailing commercial and social interests of negotiability, finality, and uniformity remain constant. Hence, application of the discovery rule to claims of unauthorized payment of negotiable interests/breach of contract is no less disruptive to the carefully balanced dynamics of the UCC than its application to claims of conversion arising under section 3–420 of the Code. Thus, like claims for conversion, those for unauthorized payment accrue, and the limitation period prescribed by section 4–406 begins to run, when the instrument is negotiated. *Cf. John Hancock Fin. Servs., Inc.,* 346 F.3d at 734; *Menichini,* 995 F.2d at 1231; *Husker News,* 460 N.W.2d at 478; *Pero's Steak House,* 90 S.W.3d at 624. The limitations period applies mechanically and, in the absence of evidence of fraudulent concealment by the defendant, claims not brought within one year are time-barred. *See* 13 Pa.C.S. § 4406(f); *see also McMickle v. Girard Bank,* 356 Pa.Super. 521, 515 A.2d 16, 17 (1986) (stating in dictum, "Section 4406(d) imposes an absolute one-year time limit on a customer to notify his or her bank of the unauthorized signature").

¶ 23 This disposition accords entirely both with the law of other UCC jurisdictions that have adopted the majority rule, and with the existing law of this Commonwealth. We find unavailing the Estate's assertions to the contrary, that the holding in *Menichini* (and by extension, its progeny) contravenes UCC § 1–103 and *New Jersey Bank, N.A. v. Bradford Sec. Operations, Inc.,* 690 F.2d at 345–46. Brief for Appellant at 17–23. UCC section 1–103 provides as follows:

§ 1103. **Supplementary general principles of law applicable**

Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel,

fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa.C.S. § 1103. In *New Jersey Bank*, the Court of Appeals applied this section in conjunction with the principle of liberal construction enunciated in sections 1–102(1)–(2), to conclude that "[a]s a general rule, courts have read these two principles of construction to mean that the UCC does not displace the common law of tort as it affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code." 690 F.2d at 345–36. We find nothing in this observation that conflicts with our holding that the discovery rule may not be applied to the claims discussed, *supra*. As development of the common law remains the province of the judiciary, its application is subject to judicial discretion. Moreover, to the extent that principles of common law are otherwise applicable, their application is specifically contraindicated where they serve to impede the objectives of the Code. *Cf. Menichini*, 995 F.2d at 1231 ("Vigorous application of the statute of limitations is a reasonable means of achieving certainty in commercial transactions."). Because we have concluded here that application of the discovery rule would demonstrably impede the schema of the UCC, we find no authority in section 1–103 to compel its application.

¶ 24 Similarly, we find no application for the "rule" the Estate asserts in *Peaceman v. PNC Bank*, 32 Pa.D. & C.4th 369 (Mont. Co.1996). *Peaceman*, regardless of its holding, is the decision of a trial court and does not bind the decision of this Court or that of the trial court in Carbon County. Moreover, the court in *Peaceman* did not apply the discovery rule; rather, it determined that a cause of action against the obligor of a demand note accrues when the demand is made. *See id.* at 382 (citing 13 Pa.C.S. § 3122(b)). Based on the facts of record, the court determined that because the cause of action had accrued less than three months prior to the filing of the plaintiff's complaint, the underlying action was timely. *See id.* at 384 ("In any event, section 3122(b) is clear on its face. Since the cause of action accrues on demand, the statute began to run when Peaceman first made demand for payment which at the earliest was July 28, 1994. He filed suit on October 18, 1994, well within the four-year statute of limitations imposed by 42 Pa.C.S. [§ ] 5525(7)."). Accordingly, we find *Peaceman* wholly inapposite.

¶ 25 For the foregoing reasons, we conclude that the trial court did not err in its application of the respective statutes of limitation in this case. Because there remains no issue of material fact concerning the dates on which the causes of action at issue accrued, the trial court did not err in granting summary judgment in favor of the defendants. *See Menichini*, 995 F.2d at 1231 ("When the only legally significant temporal events are the time of injury and the time of filing, the issue whether the statute of limitations bars an action becomes a relatively simple determination capable of resolution on the basis of judicial pleadings.").

¶ 26 Order **AFFIRMED.**