FISHER, Circuit Judge,
dissenting.
The primary question in this appeal is not whether there is a difference between the common law presumption of payment and the governing statute of limitations, but rather whether the application of the evidentiary presumption to a bearer certificate of deposit governed by the UCC frustrates the Code’s “objectives of negotiability, finality, and uniformity in commercial transactions.” Menichini v. Grant, 995 F.2d 1224, 1230 (3d Cir.1993). Because I find that engrafting the evidentiary presumption would hinder the objectives of the UCC, I part ways with the majority and respectfully dissent.
A certificate of deposit is a type of negotiable instrument, defined under the UCC as “an instrument containing an acknowledgmént by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money.” 13 Pa. Cons.Stat. § 3104(j). The particular certificate of deposit at issue in this case is “payable to bearer,” which entitles the person in possession to payment. Id. § 3109(a)(1). An instrument payable to bearer may be negotiated by delivery alone. Id. § 3109 cmt. 1.
Section 3118 of the UCC contains a comprehensive section setting forth the applicable statutes of limitations for all negotiable instruments under Article 3. Regarding the statute of limitations for certificates of deposit, subsection 3118(e) provides as follows:
An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker, but, if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.
Id. § 3118(e). Under this subsection, the statute of limitations is triggered when a demand for payment is made. Similar to the other provisions of section 3118, the subsection “does not state when a cause of action accrues, but it generally states the time after which a lawsuit may not be filed.” 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16-16 (5th ed.2005).
Section 1103 provides generally that the common law supplements the UCC “[u]n-less displaced by the particular provisions *136 of this title[.]”[3] The Superior Court of Pennsylvania has explained that “the UCC does not displace the common law ... as it affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code.” Hollywood v. First Nat’l Bank of Palmerton, 859 A.2d 472, 484 (Pa.Super.Ct.2004) (emphasis added) (quoting New Jersey Bank N.A. v. Bradford Sec. Operations, Inc., 690 F.2d 339, 345-46 (3d Cir.1982)). The purposes and policies of the UCC are to simplify, clarify, and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to make uniform the law among the various jurisdictions. 13 Pa. Cons. Stat. § 1102(b). Thus, our focus here must be upon whether the statute of limitations for certificates of deposit set forth in the UCC has displaced the common law evidentiary presumption that debts older than twenty years are deemed paid.
Several decisions from related areas are instructive to my resolution of this issue. In Menichini v. Grant, 995 F.2d 1224 (3d Cir.1993), we concluded that, under Pennsylvania law, the common law discovery rule did not apply to toll the statute of limitations with respect to conversion claims involving negotiable instruments. Following the lead of most courts which had addressed the issue, we stated that applying the discovery rule to negotiable instruments was “inimical to UCC policies of finality and negotiability”:
As tempting a choice as [it] may be in an individual case, we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitations period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and “certainty of liability” advanced.
Id. at 1230 (quoting Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 479 (Iowa 1990)).
Similarly, the Superior Court of Pennsylvania in Hollywood v. First National Bank of Palmerton, 859 A.2d 472 (Pa.Super.Ct.2004), agreed with our analysis in Menichini and held that “the discovery rule does not apply to toll the statute of limitations for claims of conversion of negotiable instruments.” Id. at 482 (Pa.Super.Ct.2004) (quoting Pero’s Steak & Spaghetti House v. Lee, 90 S.W.3d 614, 624 (Tenn.2002)). The court concluded that “[t]he limitations period applies mechanically and, in the absence of evidence of fraudulent concealment by the defendant, claims not brought within one year are time-barred.” Id. at 483 (emphasis added). Acknowledging that not applying the discovery rule might be harsh under certain circumstances, the court nonetheless determined that “considerations of negotiability, certainty, and finality” outweighed these factors and that “the need for expedition in commercial transactions is best achieved by safeguarding negotiability and finality of negotiable instruments and assuring uniformity of applicable law across state boundary lines.” Id. at 482. See also Gress v. PNC Bank, 100 F.Supp.2d 289, 292-93 (E.D.Pa.2000) (hold *137 ing that the discovery rule did not toll the statute of limitations set forth in section 3118(g)).
Finally, in Pagano v. United Jersey Bank, 143 N.J. 220, 670 A.2d 509 (1996), the New Jersey Supreme Court determined that the common law evidentiary presumption did not apply to a suit involving a claim for the proceeds of a passbook savings account.. Examining the history of the presumption, the court concluded that the presumption was not generally recognized in the banking context, and that “the holder of a savings-account passbook has no reason to take any action [to ensure the account is open] because he or she feels that the deposit is safe.” Id. at 514. In addition, echoing some of our considerations in Menichini, the court stressed that the responsibility to have retained information that the savings account was closed should rest with the bank, which made the “conscious economic decision ... to shift its resources away from record retention.” Id.
The principles set forth in the above cases, which should guide our resolution of this dispute, instruct that the common law evidentiary presumption should give way to the UCC. The negotiable instrument at issue is a certificate of deposit payable to bearer, which is freely negotiable and entitles the party in possession to payment. Engrafting the common law evidentiary presumption on the statute of limitations will effectively create a twenty-year statute of repose that focuses on the date that the certificate of deposit was issued by the bank, rather than, as set forth under the statute, the date a demand for payment is made. This rule not only conflicts with the statute, but also creates the practical effect of requiring the holder of a bearer certificate of deposit to prove a negative, i.e., that the holder was never paid on the certificate. Such a rule could impact the free negotiability of the instrument with respect to a subsequent holder-in-due course. In addition, Mellon Bank was the party in the best position to monitor whether its demand certificate of deposit had been paid in order to ensure the “finality” of the transaction. Finally, the consideration that the UCC should be interpreted to ensure uniformity in commercial transactions counsels against applying the presumption, particularly in the backdrop of decisions holding that common law rules do not trump the mechanical application of statutes of limitations set forth under the UCC and that the common law presumption is inapplicable in the banking context.
The two decisions cited by the majority, Flanagan v. Fidelity Bank, 438 Pa.Super. 516, 652 A.2d 930 (1995), and Gilmore v. Alexander, 268 Pa. 415, 112 A. 9,11 (1920), do not persuade me otherwise. Contrary to the majority’s citation of Flanagan for “illumination,” the Superior Court of Pennsylvania never addressed the applicability of the common law evidentiary presumption in its opinion, but rather focused on the trial court’s valuation of the certificate of deposit. Flanagan, 652 A.2d at 931 & n. 2 (noting that, although the court of common pleas determined that the presumption applied, that decision was not appealed). In Gilmore, an eighty-six-year-old decision that predated Pennsylvania’s adoption of the UCC in 1953,[4] the Pennsylvania Supreme Court held that the common law evidentiary presumption applied to a “simple contract debt” requiring a garnishee to prove that an execution attachment filed more than twenty years *138 prior to the suit had not been paid. 112 A. at 11. This decision does not relate to the UCC or reflect its policy considerations, and it does not persuade me that the UCC statute of limitations should give way to the common law evidentiary presumption.
Accordingly, for the reasons set forth above, I would conclude that the common law evidentiary presumption should not be applied in this case. As a result, I respectfully dissent.

. Section 1103 states as follows:
Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
13 Pa. Cons.Stat. § 1103.

. See Keystone Bank v. Flooring Specialists, Inc., 513 Pa. 103, 518 A.2d 1179, 1185 n. 7 (1986) (noting that Pennsylvania became the first state to adopt the Uniform Commercial Code in 1953).