# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

KATHLEEN KEELER,                    )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        C.A. No. CPU4-17-000071
                                    )
WELLS FARGO BANK, N.A.,             )
a subsidiary of Wells Fargo & Co.,  )
                                    )
        Defendant.                  )
                                    )

Elwood T. Eveland, Jr., Esq.                Kevin J. Mangan, Esq.
The Eveland Law Firm                        Nicholas T. Verna, Esq. (argued)
715 N. King St., Suite 200                  Womble Bond Dickinson LLP
Wilmington, DE 19801                        222 Delaware Ave., Suite 1501
*Attorney for Plaintiff*                    Wilmington, DE 19801
                                            *Attorneys for Defendant*

## MEMORANDUM ORDER

### Facts & Procedure

On January 5, 2017, Plaintiff, Kathleen Keeler ("Keeler"), filed a Complaint against

Defendant, Wells Fargo Bank ("Wells Fargo"), alleging a breach of contract and violation of

Delaware's Uniform Commercial Code ("UCC") § 4-406.[1] Keeler's employee fraudulently

---

[1] The Court will not address Keeler's claim that Wells Fargo is liable under a breach of contract theory. Plaintiff's Complaint at ¶ 15 ("Keeler's Complaint"). When analyzing negligence and breach of contract claims alongside a claim under Article 4, the Delaware Superior Court has found the former claims to be preempted. *See Mahaffy & Assocs., Inc. v. Long*, 2003 WL 22351271, at *5-6 (Del. Super. Sept. 29, 2003) ("Where the legislature has preempted the field by enacting a provision in the UCC which establishes the rights of the parties, competing theories of liability are not permitted. The Code preempts common law duties; an action in negligence or breach of contract cannot stand."); *see also* 6 *Del. C.* § 1-103 ("Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause[,] supplement its provisions.").

cashed checks connected to her Wells Fargo bank accounts from October 15, 2013 to December 5, 2013.[2] Keeler sought reimbursement from Wells Fargo and was denied.[3] The Complaint does not state when the employee's fraud was first brought to Keeler's attention, but she asserts that she verbally reported the fraud to a Wells Fargo employee on December 5, 2013 and again on December 16, 2013, when she opened new accounts with Wells Fargo.[4]

Wells Fargo, however, did not provide Keeler with "appropriate forms" to file a fraud claim with the bank until April 2014.[5] On August 8, 2014, after Keeler filed her claim, Wells Fargo formally denied her claim of fraud.[6] Keeler avers that Wells Fargo breached its contract with her and failed in its duty to credit her account pursuant to 6 *Del. C.* § 4-406.[7] Keeler seeks judgment against Wells Fargo in the amount of $22,200 along with reasonable attorney's fees, costs, and pre- and post-judgment interest at the legal rate.[8]

On October 13, 2017, Wells Fargo filed a Motion for Judgment on the Pleadings, asserting that the Complaint is barred by the Statute of Limitations set forth in 6 *Del. C.* § 4-111.[9] Wells Fargo claims that this suit is untimely because it was filed three years after the alleged fraudulent checks were cashed and should be dismissed with prejudice.[10] Although § 4-111 does not state when an "action accrues," Wells Fargo relies on the language of Comment 5 to § 4-406, which states: "Section 4-111 sets out a statute of limitations allowing a customer a three-year period to seek a credit to an account improperly charged by payment of an item bearing an unauthorized

---

[2] Keeler's Complaint at ¶¶ 5, 15.
[3] *See id.* at ¶ 12.
[4] *See id.* at ¶¶ 7-10. The specifics of Keeler's verbal reports to Wells Fargo are unclear.
[5] *See id.* at ¶ 10.
[6] *See id.* at ¶ 12.
[7] *See id.* at ¶ 15.
[8] *See id.* at ¶ 16.
[9] Defendant Wells Fargo Bank N.A.'s Motion for Judgment on the Pleadings at 3, ¶ 9 ("Wells Fargo's Motion").
[10] *See id.*

indorsement."[11]  Wells Fargo argues that its interpretation of Comment 5 aligns with Delaware law that the statute of limitations generally begins when the parties are capable of knowing that they can sue or be sued.[12]  Hence, Wells Fargo argues that because the fraudulent activity allegedly occurred between October 15, 2013 and December 5, 2013, and the Complaint was not filed until January 5, 2017, the case is time-barred.[13]  Also, Wells Fargo argues that the "discovery rule" does not apply to the UCC but, even if it does, Keeler had actual knowledge of the fraud on December 5, 2013.[14]

On November 1, 2017, Keeler filed an Answer to Wells Fargo's Motion.[15]  Keeler argues that Comment 5 to § 4-406 does not expressly or implicitly state when the cause of action for an improper charge accrues.[16]  In addition, Keeler asserts that her verbal reports of fraud to Wells Fargo on December 5, 2013, and again on December 16, 2013, should not be considered in the statute of limitations analysis, because she was not provided with the appropriate forms to make a claim until April 29, 2014.[17]  Keeler contends that the statute of limitations should begin to run from August 8, 2014, when Wells Fargo denied her fraud claim.[18]

On November 2, 2017, Wells Fargo filed a Reply in Support of its Motion.[19]  Wells Fargo argues that any "obligations" it has to Keeler are according to § 4-401 and not § 4-406.[20]  Section

---

[11] *See id.* at 3-4, ¶¶ 10-16 (quoting U.C.C. § 4-406 cmt. 5).  While Wells Fargo cites to the federal Uniform Commercial Code, the relevant portion of Comment 5 is identical.

[12] *See id.* at 4, ¶¶ 14-15.

[13] *See id.* at 4, ¶ 16.

[14] Wells Fargo's Motion at 5, ¶¶ 17-18.

[15] Plaintiff's Response to Defendant Wells Fargo Bank N.A.'s Motion for Judgment on the Pleadings ("Keeler's Response").

[16] *See id.,* ¶ 11.

[17] *See id.,* ¶¶ 14-15.

[18] *See id.,* ¶ 16.

[19] Defendant Wells Fargo Bank N.A.'s Reply in Further Support of its Motion for Judgment on the Pleadings ("Wells Fargo's Reply").

[20] *See id.* at 1-2, ¶¶ 2-3.

4-401 allows a bank to charge a customer's account if the "item" is "properly payable."[21] Therefore, Wells Fargo argues that because it charged the account, and Keeler is claiming the fraudulent items were not "properly payable," the action—by its very nature—must accrue when Keeler's account was charged.[22] Wells Fargo also notes that courts in other jurisdictions have held that the statute of limitations for negotiable instruments begins to run when the instrument is negotiated, under both UCC Article 3 and Article 4.[23]

***The Law***

*Court of Common Pleas Civil Rule* 12 provides, "[a]fter the pleadings are closed but with such time as to not to delay the trial, any party may move for judgment on the pleadings."[24] On such a motion, the applicable standard is "almost identical" to the standard for a motion to dismiss, and requires the Court to accept all of the well-pled facts in the Complaint as true and construe all reasonable inferences in favor of the non-moving party.[25] The Court will grant a motion for judgment on the pleadings when "no material issues of fact exist and the moving party is entitled to judgment as a matter of law."[26] "[F]or purposes of the motion, the moving party admits the allegations of the opposing party's pleading, but contends that they are insufficient as a matter of law."[27]

---

[21] *See id.; see also* 6 *Del. C.* § 4-401 (When bank may charge customer's account) ("A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.").

[22] Wells Fargo's Reply at 2, ¶ 4.

[23] *See id.* at 2, ¶ 5.

[24] Ct. Com. Pl. Civ. R. 12(c).

[25] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014) (quoting *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Aug. 8, 2012)).

[26] *Id.*

[27] *Green v. PNC Fin. Servs. Grp., Inc.*, 2015 WL 1236847, at *2 (Del. Com. Pl. Mar. 18, 2015) (internal citations omitted).

4

*Discussion*

In Wells Fargo's Motion and subsequent briefing, it argues the general principle of accrual—the statute of limitations begins to run when the victim is able to sue.[28] Conversely, Keeler proffers a fact-specific argument that the statute of limitations should not begin to run until the victim is notified by the bank that it will not reimburse the victim's account.[29]

Both parties have conceded that the UCC does not define when a claim accrues relevant to 6 *Del. C.* § 4-401 or § 4-406,[30] and neither party has provided applicable Delaware case law. The Court's own research has yielded only one Delaware case that tangentially addresses the applicability of Article 4's statute of limitations to a claim of improper payment.[31] In the absence

---

[28] The Court disagrees with Wells Fargo's interpretation of Comment 5, which states in relevant part: "the reference in former subsection (4) to unauthorized indorsements is deleted. Section 4-406 imposes no duties on the drawer to look for unauthorized indorsements. *Section 4-111 sets out a statute of limitations allowing a customer a three-year period to seek a credit to an account improperly charged by payment of an item bearing an unauthorized indorsement.*" 6 *Del. C.* § 4-406 cmt. 5 (emphasis added). The comment, when read in its entirety, is simply denoting a change in versions and does not define when an action accrues under § 4-111.

[29] Keeler mainly relies on the non-analogous cases of *Davis v. Wells Fargo Bank, N.A.* and *Alonso v. Maldonado*. *Davis v. Wells Fargo Bank, N.A.*, 2017 WL 4516830 (D. Colo. Oct. 10, 2017); *Alonso v. Maldonado*, 2015 WL 7068206 (Del. Super. Nov. 12, 2015). Unlike in the case *sub judice*, the court in *Davis* was dealing with a promissory note installment contract that expressly triggered the statute of limitations when Wells Fargo accelerated payment of the installment contract. *Davis*, 2017 WL 4516830, at *2, 4. Keeler argues that *Davis* is analogous because it was bank action—to accelerate the amount due—that caused the statute of limitations to accrue. Keeler's Response at ¶ 19. However, the relevant Colorado statute expressly states that "[a] cause of action for debt, obligation, money owed, or performance shall be considered to accrue on the date such debt, obligation, money owed, or performance becomes due." *Davis*, 2017 WL 4516830, at *3 (quoting Colo. Rev. Stat. § 13-80-108(4)) (internal quotation marks omitted). Thus, unlike in this case, accrual was defined in *Davis*.

Similarly, *Alonso* is not analogous. In *Alonso*, the court held that the defendant was not required to reimburse the plaintiff for monetary advances until either: (1) the last advancement occurred, or (2) Defendant's home sold. *Alonso*, 2015 WL 7068206, at *2-3. Hence, the court found that the statute of limitations did not begin to run when the plaintiff advanced the first payment to the defendant. *See id.* at *2. Keeler argues that *Alonso* supports her position that the statute of limitations does not commerce until the defendant acts. Keeler's Response at ¶ 21. Yet, *Alonso* does not stand for this proposition. Because the parties had not expressly stated when repayment would occur, the court in *Alonso* found accrual of the debt to occur a " 'reasonable time after the loan is made.' " *Alonso*, 2015 WL 7068206, at *2-3 (quoting *Estate of Rigby v. Walls*, 1994 WL 728843, at *6 (Del. Ch. Nov. 9, 1994)). Thus, accrual was defined in *Alonso*. In addition, the underlying facts of *Alonso*—the plaintiff loaned her cousin nearly sixty-thousand dollars and allowed her cousin a reasonable time to repay her—is not analogous to the strict UCC requirements that govern a bank's actions. *See id.* at *1-3.

[30] Wells Fargo's Motion at 4, ¶ 14 ("Although the Delaware UCC and the Model UCC fail to define when a cause of actions 'accrues' . . . ."); Keeler's Response at ¶ 12 ("As defendant concedes, the UCC neither defines when a cause of action accrues . . . .").

[31] *In re Federal-Mogul Global, Inc.*, 319 B.R. 363, 365-66 & n.8 (Bankr. D. Del. 2005) (noting in *dicta* that the three-year statute of limitations began to run from the date the check was drawn, even though the plaintiff discovered the checking mistake and the accused bank denied a claim for reimbursement within the three-year statute of limitations).

of Delaware case law on point, the Court examined the prevailing views in other jurisdictions. Three distinct approaches have emerged. One approach is to apply the "discovery rule" to State UCC claims that are inherently unknowable; therefore, allowing the statute of limitations to accrue when the victim knew or should have known of the wrong.[32] A second approach is to apply the statute of repose in place of the three-year statute of limitations and require the victim to notify the bank of fraudulent charges on the account within one year of receiving an accounting statement from the bank.[33] This, in effect, interposes a one-year statute of limitations rather than the UCC's three-year statute of limitations, and focuses on when the victim properly notified the bank.[34] Finally, under a third approach, other jurisdictions agree with Wells Fargo's interpretation that the statute of limitations begins to accrue when negotiable instruments are negotiated—that is, when the account is debited—under both Article 3 and Article 4.[35]

While all three approaches are detrimental to Keeler's case, this Court finds the third approach to align with Delaware legal principles. Applying the first approach to the facts in this case would require this Court to apply the "discovery rule" to a knowable UCC claim, which is

---

[32] *See, e.g., Cont'l Cas. Co. v. American Nat'l Bank*, 768 N.E. 2d 352, 356-57, 363-64 (Ill. App. Ct. 2002) (interpreting the three-year statute of limitations relevant to an embezzlement claim under the Illinois UCC).

[33] *See, e.g., Deutsch v. Wells Fargo Bank, N.A.*, 2015 WL 3833226, at *6 (E.D. Pa. June 22, 2015) ("Plaintiff must properly notify the bank of the dispute in accordance with 13 Pa.C.S. § 4406(c) and must bring the claim within the relevant statute of limitation imposed by 13 Pa.C.S. § 4406(f).").

[34] *See id.* at *6-7 & n.8.

[35] *See Silver v. Wells Fargo Bank, N.A.*, 2017 WL 2833254, at *9 (D. Md. June 30, 2017), *order vacated in part on reconsideration*, 2017 WL 3621235 (D. Md. Aug. 23, 2017) ("[T]he Court concludes that the discovery rule did not toll the UCC's three-year limitations period and Silver's UCC causes of action accrued at the time when each check was negotiated."); *U.S. v. Zarra*, 2011 WL 3667313, at *2-3 (W.D. Pa. Aug. 22, 2011) (holding that the three-year statute of limitations began to run when the "check was negotiated and the funds debited" from the account); *New Jersey Lawyers' Fund for Client Protection v. Pace*, 892 A.2d 661, 661 (N.J. 2006) ("We agree with the Appellate Division that, generally, the statute of limitations on a claim for conversion of negotiable instruments begins to run from the date the instrument was negotiated."); *Connors v. U.S. Bank*, 2008 WL 1759071, at *1, 6 (Ohio Ct. App. Apr. 17, 2008) (applying three-year statute of limitations to the year when the check amounts were drawn from the account); *Estate of Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472, 483 (Pa. Super. Ct. 2004) (finding the limitation period to run for unauthorized payment claims when the instrument is negotiated, and making an analogy to claims for conversion of negotiable instruments).

counter to Delaware policy.[36] The second approach wrongly equates the procedural statute of limitations with the substantive statute of repose under the UCC.[37] In Delaware, the two limitation periods are separate.[38] In *Admiral Holding v. The Town of Bowers*, the Superior Court stated:

> It must first be noted that there is apparent confusion in the law as to the distinction between a statute of repose and a statute of limitations. Woolley's Delaware Practice equates the two, noting, "Statutes of limitations are founded in wisdom and sound policy. They have been termed statutes of repose and are regarded as highly beneficial." More recent definitions, however, draw a distinction between statutes of limitations and statutes of repose, observing that:
>
>> A statute of repose ... limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.
>
> Black's Law Dictionary similarly differentiates between statutes of repose and statutes of limitations:
>
>> A statute of limitations bars an action unless the plaintiff files the action within a specified period of time after the injury occurs. A statute of repose on the other hand terminates any right of action after a specified period of time has elapsed, regardless of whether an injury has yet occurred.[39]

---

[36] The "discovery rule" does not apply to the claims in this case. The Delaware Superior Court has stated, "[t]he time of discovery rule applies to breach of contract claims and to claims for breach of an express warranty not covered by the UCC. *It applies when the injury or conditions are 'inherently unknowable' and the plaintiff is 'blamelessly ignorant.'*" (emphasis added) (internal citations omitted)). *Legatski v. BethanyForest Assoc., Inc.*, 2005 WL 2249598, at *2 n.3 (Del. Super. Sept. 15, 2005); *see also Amvest Corp. v. Anderson Equip. Co.*, 358 F. App'x 344, 347 (3d Cir. 2009) (interpreting the application of the rule in Pennsylvania: " '[a]s the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause.' " (quoting *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 858 (2005))).

[37] *Deutsch*, 2015 WL 3833226, at *6 ("Defendant asserts that these claims should be dismissed because Plaintiff: (1) . . . and (2) because the claim is time barred by the statute of limitations imposed by 13 Pa.C.S. § 4406(f) [statute of repose section]."). In fact, prior to *Deutsch*, the District Court for the Eastern District of Pennsylvania stated that the statute of limitations and statute of repose were distinct. *See Envtl. Equip. & Servs. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 709 & n.2, 716-21 (E.D. Pa. Sept. 23, 2010).

[38] *Admiral Holding v. The Town of Bowers*, 2004 WL 2744581, at *2 (Del. Super. Oct. 18, 2004).

[39] *See id.* (internal footnotes omitted).

This Court finds the second approach to be flawed because it improperly subsumes a substantive limitation into the analysis of a procedural limit.[40] Indeed, at the motion to dismiss stage, applying the statute of repose rather than the statute of limitations to a cause of action for a bank's improper payment is problematic, because the statute of repose does not require the court to determine when the claim accrues.[41]

Conversely, the third approach is intuitive,[42] creates consistency, and accords with the UCC's founding principle of uniformity.[43] Hence, this Court is apt to follow jurisdictions that adhere to the third approach. Applying the third approach to the present case, this Court finds that the statute of limitations on each check began to run when they were cashed between October 15, 2013 and December 5, 2013. Therefore, because Keeler did not file her Complaint until January 5, 2017, her claims under the UCC are time-barred.

---

[40] This Court sees no reason to address the substantive statute of repose when the statute of limitations is dispositive.

[41] *Deutsch*, 2015 WL 3833226, at *6-7 & n.8 (focusing solely on the statute of repose and if the plaintiff notified the bank that a fraudulent check had been cashed).

[42] *See, e.g., Pero's Steak & Spaghetti House v. Lee*, 90 S.W. 3d 614, 623-24 (Tenn. 2002) (noting the necessity under UCC principles, but "harsh" reality, of running the statute of limitations from the date the check is negotiated).

[43] *See Heronemus v. Ulrick*, 1997 WL 524127, at *4 (Del. Super. July 9, 1997) (stating that the UCC's "express[] purpose" is uniformity); *Husker News Co. v. Mahaska State Bank*, 460 N.W. 2d 476, 477 (Iowa 1990) ("These [UCC] objectives include the uniform application of commercial law among the states and the presumption in favor of predictability and finality of commercial transactions.").

### Conclusion

For the reasons stated above, Wells Fargo's Motion for Judgment on the Pleadings is **GRANTED**. Keeler's case is dismissed with prejudice.

**IT IS SO ORDERED** this 5th day of December, 2017.

Sheldon K. Rennie,
Judge

cc:    Ms. Tamu White, Chief Civil Clerk