Michael F. PETOCK

v.

THOMAS JEFFERSON UNIVERSITY, et al.

Civ. A. No. 84–5937.

United States District Court, E.D. Pennsylvania.

Feb. 26, 1986.

Arthur Littleton, Philadelphia, Pa., for plaintiff.

Stephen Gold, Philadelphia, Pa., for defendants.

## BENCH OPINION

JAMES McGIRR KELLY, District Judge.

The plaintiff, Michael F. Petock, has rested his case and the defendants, Thomas Jefferson University, ("University") and Stephanie Naidoff, ("Naidoff"), now move for a directed verdict. The plaintiff's case involves allegations of age discrimination and related abuses by the defendants. Three claims remain in the plaintiff's complaint: Count I, age discrimination pursuant to the Age Discrimination Act of 1975 (and allegations of retaliatory acts); Count III, breach of an express and implied contract; and Count IV, coercion, fraud and duress.

In deciding a motion for directed verdict, the question to be addressed is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there is only one conclusion as to the verdict that reasonable men could have reached. *Ryan Distribution Corp. v. Caley*, 147 F.2d 138, 140 (3d Cir.) *cert. denied* 325 U.S. 859, 65 S.Ct. 1199, 89 L.Ed. 1979 (1945). The question is not whether there is literally no evidence supporting the plaintiff in this case, but rather, whether there is evidence upon which the jury could properly find a verdict. *See* 9 Wright and Miller, *Federal Practice and Procedure: Civil* § 2524 at 543 (1971). The court must view the evidence most favorably to the plaintiff (as the party against whom the motion is made) and give him the benefit of all reasonable inferences from the evidence. *Denneny v. Siegel*, 407 F.2d 433 (3d Cir.1969).

*Age Discrimination and Retaliation*

The plaintiff claims he has been discriminated against by the defendant university

because he was older than his fellow medical students. The plaintiff's claim rests on the Age Discrimination Act of 1975 ("the 1975 Act"), the purpose of which is to prohibit discrimination on the basis of age in programs or activities receiving federal financial assistance. 42 U.S.C. § 6101. Little case law exists which specifically applies the 1975 Act, however, the plaintiff's burden may be illustrated by analogy to civil rights suits brought under Title VII or under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. In *McDonnell Douglas Corp. v. Green* the United States Supreme Court clarified that in a complaint under Title VII the plaintiff has the burden of establishing that he was qualified for the benefits he claims he was deprived of, and that, despite being qualified, he was treated differently than other qualified persons and was denied the benefits. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Third Circuit has also articulated the plaintiff's heavy burden in bringing suits analogous to the one at bar. In *Lewis v. The University of Pittsburgh*, an employment discrimination case, the court emphasized that Title VII and civil rights statutes require a showing of "but for causation". 725 F.2d 910, 914 (3d Cir.1983). In view of these standards, after reviewing the evidence presented by the plaintiff, I find that the plaintiff has not met his burden of showing age to have been a determinative factor in the defendants' action. A verdict will be directed for the defendants with respect to the age discrimination count and the related claims of retaliation.

To prove his age discrimination claim, the plaintiff attempted to show that on the basis of his age the defendants improperly failed him in his family medicine rotation, gave him average or less than average evaluations in his pediatrics rotation, denied his request for a transfer of his internal medicine clerkship, and denied his application for readmission subsequent to his withdrawal from the University. In fact, testimony and exhibits revealed that the evaluations and grades the plaintiff received were determined by rational inquiries into the quality of his work. Testimony also revealed that the denial of the plaintiff's request for a transfer of his internal medicine rotation to a location closer to his law practice was consistent with a uniform University policy that transfers may be arranged between students, but that transfers were not granted upon unilateral demands. Furthermore, the fact that the University did not change its policies and extend extraordinary efforts to assist Mr. Petock in his effort to both practice law and study medicine is not indicative of age discrimination. Finally, testimony also revealed that the University acted properly in responding to the plaintiff's failure in the family medicine rotation and to his absence in internal medicine (an absence not because of medical reasons, but rather, because Mr. Petock unilaterally absented himself for the entire twelve week rotation): the University examined the plaintiff's entire record. Similarly, the evidence does not suggest that the University acted improperly in processing Mr. Petock's application for readmission. Even if the issue of the plaintiff's pending age discrimination suit was raised in an interview, it does not by itself indicate the defendants acted in a discriminative manner towards the plaintiff.

Moreover, the age discrimination count must fail not only because the evidence shows that the academic evaluations were properly conducted, but also for the fact that the plaintiff has not demonstrated that he was treated differently because of his age. Testimony and exhibits have shown that younger students also failed courses for similar reasons, that younger students also received evaluations based on the same criteria as that used to evaluate Mr. Petock, and that younger students were also denied readmission for reasons similar to those articulated by the defendants as the basis for denying the plaintiff's application.

Finally, the claims of retaliation must also fail. Mr. Petock asserts that he was treated harshly and unfairly by the

faculty and was denied his request for re-admission in retaliation for initiating an age discrimination suit against the University. However, testimony has revealed that both faculty and administrators who knew of the suit and those who did not acted similarly. The evidence has not revealed that the defendants would have afforded the plaintiff more favorable treatment had he not initiated a suit.

*Fraud and Duress*

■ The plaintiff has attempted to show that he was fraudulently coerced into signing an agreement and withdrawing from the defendant University. Further, he asserts he signed the agreement under duress. An agreement to release civil rights claims must be completed in a voluntary and knowing manner. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974). After close to three weeks of testimony and after reviewing the elements a plaintiff is required to prove in a claim of fraud and duress, I find that the only reasonable conclusion which can be possibly adduced is that the plaintiff has not met its burden with respect to this claim.

The plaintiff attempted to show that his withdrawal and release agreement, dated March 24, 1983, is invalid because of fraudulent action by the defendants. The plaintiff asserts that defendant Stephanie Naidoff, as University counsel, fraudulently induced the plaintiff to deliver the withdrawal agreement by threatening that she had all family medicine written examinations before her in her office, that they were graded, and that the plaintiff was to receive a failing grade, when in fact, the exams had not been graded at that point. The plaintiff also asserts that in this conversation Ms. Naidoff threatened to contact the head of the plaintiff's next rotation and arrange for further retaliatory treatment.

■ The defendants deny that the alleged fraudulent statements were made. However, the jury need not resolve this issue, for three substantial and certain reasons: first, the withdrawal and release agreement was valid and complete before the alleged fraudulent conversation took place; second, Mr. Petock's own testimony indicates that he did not rely on the alleged statements; and third, testimony has not revealed any evidence that the plaintiff acted under duress so as to invalidate the agreement.

Mr. Petock, an experienced attorney, drafted an agreement which specified that he would be allowed to resign from the University in good standing and would agree to withdraw the complaint he filed with the U.S. Department of Health and Human Services. The agreement specifies that the signing parties are "intending to be legally bound." Mr. Petock sent this agreement to the defendants by cover letter dated March 8, 1983. Nowhere in the cover letter or in the agreement did the plaintiff indicate he was extending this contract without prejudice. The defendants complied with the plaintiff's explicit and detailed instructions to "execute" the contract by signing, attesting, sealing and delivering the document. The plaintiff received the executed contract from the defendants, and signed it and dated it on March 24, 1983. The plaintiff now claims that the document was not effective until delivery of a copy to the defendants on April 4, 1983. While the plaintiff's argument would be in keeping with the traditional "mailbox rule" of contracts, that rule does not apply to these circumstances. Here, the delivery requirement was explicitly modified in the document (which the plaintiff himself drafted). The document was effective upon its execution by Michael F. Petock, on March 24, 1983. Accordingly, the alleged fraudulent statements are not at issue. It is uncontroverted that the Naidoff-Petock conversation took place on April 1, 1983 which is a full week after the plaintiff had withdrawn from the University.

■ Furthermore, even if the contract had not been effective until the delivery to the defendants of an executed copy on April 4, 1983, the evidence suggests the

plaintiff has not set forth a claim of fraud. Fraud consists of a false representation which deceives another so that he relies on it and acts upon it to his legal injury. *Baker v. Rangos*, 229 Pa.Super. 333, 348; 324 A.2d 498, 505 (1974). The plaintiff himself testified that he did not believe the defendant's alleged fraudulent statements when she uttered them because it was unbelievable to think all the exams had been graded one or two days after the test. This testimony controverts the claim by the plaintiff that he relied on the alleged fraudulent statement.

Finally, the withdrawal and release agreement is not void for reasons of duress. Repetitive questioning, both on direct and on cross, has revealed that in drafting and signing the agreement Mr. Petock acted on his own initiative, in a free and unconstrained manner, as an experienced attorney, with the time and opportunity to reflect upon his actions and/or to consult other attorneys. There has been no showing that Mr. Petock executed the agreement under duress.

*Contractual Claims*

■ The plaintiff has attempted to show that the defendants have breached express and implied contractual obligations to the plaintiff. Given the validity of the release and withdrawal agreement, as discussed above, the plaintiff's claims in contract law must fail. The executed agreement of March 24, 1983 states that Michael Petock and Thomas Jefferson University "do hereby release, remise, quit claim and forever discharge each other from all causes of action, suits, debts, tuitions, sums of money, dues, contracts, controversies, agreements, promises and demands whatsoever both at law and equity which either party has or ever had against the other and from any other claim or by reasons of any other cause, matter or thing, whatsoever, from the beginning of the world to the date of this SETTLEMENT AGREEMENT AND RELEASE."

■ Furthermore, even if the parties had not executed a valid settlement contract, the plaintiff's claims would fail as a matter subject to directed verdict. The plaintiff asserts he was graded and evaluated arbitrarily and capriciously, in violation of his contractual rights as a student of the defendant University. However, the plaintiff has not met his burden of showing that the academic evaluations were not rationally based on, or related to, the quality of his work. *See Mauriello v. Univ. of Medicine and Dentistry of New Jersey*, 781 F.2d 46, 51–52 (3d Cir.1986). Witness after witness revealed the standard academic criteria the defendants used to evaluate the plaintiff's work, and the standard administrative policies and procedures the defendants used in processing and recording the plaintiff's grades and evaluations.

In summary, the defendants' motion for a directed verdict shall be granted as to all remaining counts. Directed verdicts are cautiously and sparingly granted. Nevertheless, I have determined the motion is appropriate in this case. Evidence sufficient to warrant submission to the jury has not been presented at this trial. An order follows.