**Judith SWARTLEY, Appellant,**

v.

**Joel HOFFNER, George Wilson, Keith Gardiner, and Lehigh University, Appellees.**

Superior Court of Pennsylvania.

Argued May 20, 1999.

Filed July 12, 1999.

(setting forth intermediate punishment as a sentencing alternative for eligible offenders).

Kevin T. Fogerty, Allentown, for appellant.

John F. Hunsicker, Jr., Philadelphia, for appellees.

Before CAVANAUGH, JOYCE and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Judith Swartley appeals from the order of the lower court granting appellees' motion for summary judgment dismissing her claims for breach of contract and educational malpractice. While courts in our Commonwealth have visited the issue of educational malpractice, we are presented with a case of first impression. Having reviewed relevant case law and policy considerations, we find that, as a matter of law, appellant's causes of action

must be dismissed; therefore, we affirm the decision of the court below granting summary judgment.

¶2 This case arises out of appellant's attempt to earn a Ph.D. degree in industrial engineering from Lehigh University. In 1985, appellant began as a student in the Ph.D. program. She completed all of her course requirements in a timely manner. Appellant chose Dr. Mikell Groover to serve as the chair of her dissertation committee and as her advisor; in 1986, she and Dr. Groover selected the other four members of her dissertation committee. After consulting with her advisor and others, appellant decided to research and write her dissertation on progress inventory. In 1987, appellant's committee approved her written proposal and she began her research. As a part of her research, appellant attempted to conduct industry surveys and formulate mathematical or statistical models; but as she prepared her dissertation, the work did not include significant statistical or mathematical analysis of data. Upon early review, a number of committee members, including appellant's advisor, objected to the work and gave appellant significant written criticism and suggestions.

¶3 As appellant continued her dissertation work, it appeared possible to schedule an oral defense of the work in 1989. Based on critiques of the dissertation by members of the committee, however, the oral defense was not scheduled. Instead, appellant continued her work and revisions in light of the negative feedback. Still, according to the parties, it appeared likely that appellant's oral defense could be scheduled for the spring of 1990. After allowing committee members and others to review the dissertation, it was decided that appellant's work did not meet the necessary standards, and, thus, the oral defense did not take place. Appellant was notified of the continuing need to make significant improvements to the dissertation prior to scheduling an oral defense of the work.

¶4 In the spring of 1990, appellant, who was pregnant at the time, requested a leave of absence to commence the following term. The university granted her request. Due to additional physical problems following her pregnancy, appellant requested and received an extended leave of absence through the 1993–94 academic year.

¶5 By the time appellant returned in 1993, the makeup of her dissertation committee changed and vacancies needed to be filled. George Kane died and Dr. John Adams left the committee for other reasons. Appellant's advisor added Dr. George Wilson and Dr. Keith Gardiner to the committee without objections from appellant.

¶6 Appellant continued to work on her dissertation during the 1993–94 academic year, though the parties disagree as to the amount of revising appellant did during that period. Regardless, appellant's final oral defense took place on December 2, 1994. After presenting her work, appellant submitted to the normal, intensive question-and-answer period. After completing her defense, appellant was excused and the committee met to discuss her work. After deliberating, the committee voted three to two not to award her a Ph.D. degree, or, in essence, to fail appellant.

¶7 Appellant brought forth the present case against Lehigh University and the three committee members who voted against her. In her suit, appellant argues that the university breached their contract to educate her and that the university or its personnel acted in an arbitrary or capricious manner. Following extensive discovery, appellees moved for summary judgment, which the lower court granted. Appellant now seeks our review of the decision granting summary judgment.

¶8 Appellant presents the following two questions for our review:

A. Did the lower court err as a matter of law, in granting summary judgment

in favor of the Defendants below on the issue of whether Judith Swartley had developed sufficient facts to submit to a jury the question of whether Defendants' misconduct resulted in a breach of the contract of education entered into between her and Lehigh University?

B. Did the lower court err as a matter of law, in granting summary judgment in favor of Defendants below on the issue of whether Judith Swartley had developed sufficient facts to submit to a jury the question of whether Defendants acted arbitrarily and capriciously in their handling and rejection of Judith Swartley's Ph.D. candidacy, leading up to the unprecedented failing grade given at her oral defense?

Appellant's brief, at 2.

¶ 9 When reviewing the grant or denial of a summary judgment motion, our standard of review is well settled. Summary judgment may be entered only if the pleadings, depositions, affidavits, and all other materials together, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Kirby v. Kirby*, 455 Pa.Super. 96, 687 A.2d 385, 387 (1997), *app. denied*, 548 Pa. 681, 699 A.2d 735 (1997). "We may overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion." *Hoffman v. Brandywine Hosp.*, 443 Pa.Super. 245, 661 A.2d 397, 399 (1995).

¶ 10 In summary judgment proceedings, the court's function is not to determine the facts, but only to determine if a material issue of fact exists. *See McDonald v. Marriott Corp.*, 388 Pa.Super. 121, 564 A.2d 1296, 1298 (1989). In passing on a motion for summary judgment, the court must examine the record in the light most favorable to the non-moving party and resolve any doubt in its favor. *See Kirby*, 687 A.2d at 387. Our standard of review in an appeal from an order granting summary judgment is plenary. *Id.* We apply the same standard as the trial court, re-

viewing all of the documentary evidence of record to determine whether there exists a genuine issue of material fact that would preclude the entry of summary judgment, and, if not, whether the moving party is entitled to judgment as a matter of law. *Id.*

### Breach of Contract

¶ 11 In her first claim, appellant argues that Lehigh University breached its contract to educate her. Appellant's case presents a novel question for this Court to consider. While other courts in this Commonwealth have addressed the issue of educational malpractice claims, as well as constitutional claims aimed at state-funded colleges and universities, here appellant argues that a private institution breached its contract to educate. When considering the issue on prior occasions, we stated: "We are persuaded by the reasoning employed by the many courts that have refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education." *Cavaliere v. Duff's Business Institute*, 413 Pa.Super. 357, 605 A.2d 397, 403 (1992). In dicta of the same decision, we went on to state that, theoretically,

[w]e can fathom no policy against permitting a cause of action for breach of contract or misrepresentation where, for example, a private trade school has made a positive representation that a certain curriculum will be offered and the student then finds that such curriculum is not available or where the school has asserted that it is accredited or licensed to give a certain degree and it is later discovered that this is false.

*Id.* at 404. Further, in *Boehm v. University of Pennsylvania School of Veterinary Medicine*, 392 Pa.Super. 502, 573 A.2d 575 (1990), our Court opened the door to the notion of a breach of contract claim against a private institution when we noted that

"[a] majority of the courts have characterized the relationship between a private college and it students as contractual in nature. Therefore, students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides." *Id.* at 579 (citations omitted).

¶ 12   Based upon the prior statements of our Court, as well as the numerous learned decisions of other courts, we now hold that the relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract. *Cf. Cavaliere*, 605 A.2d at 404 (finding that a breach of contract suit against a private educational institution would be theoretically viable in certain circumstances); *Crabtree v. California University of Pennsylvania*, 147 Pa.Cmwlth. 1, 606 A.2d 1239, 1240 (1990) (refusing to hold that a university catalog constituted a contract between a private university and a student, but nonetheless finding that, if the catalog was a contract, the university did not violate the contract); *Boehm*, 573 A.2d at 579 (stating that the relationship between a private college and its students is contractual in nature); *cf. also Merrow v. Goldberg*, 672 F.Supp. 766, 774 (D.Vt. 1987); *Petock v. Thomas Jefferson University*, 630 F.Supp. 187, 191 (E.D.Pa.1986); *Jansen v. Emory University*, 440 F.Supp. 1060 (N.D.Ga.1977), *aff'd,* 579 F.2d 45 (5 th Cir.1978).

¶ 13   In support of her claim for breach of contract, appellant argues that:

1) Her committee members' failure to meet and fulfill their duties as members of a dissertation committee constitute a breach of the university's contract to educate her;

2) The committee members breached the university's contract in failing her at oral defense because the university's contract mandates that the committee members deem her written work acceptable prior to scheduling the oral defense; and

3) The university breached its contract by failing to offer appellant the opportunity to revise and resubmit her dissertation after failing the oral defense.

*See* appellant's brief, at 14, 16, 18.   After reviewing each of appellant's claims, we affirm the decision of the court below.

¶ 14   The contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution. *See, e.g., Merrow*, 672 F.Supp. at 774 ("The terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution."); *Jansen*, 440 F.Supp. at 1062 (citing *Mahavongsanan v. Hall*, 529 F.2d 448 (5 th Cir.1976)). After reviewing appellant's first claim— that the failure of the committee members to carry out their duties as committee members constitutes a breach of contract—we find that appellant's claim is without merit.   Appellant's brief fails to point to a single provision of the written contract between the university and its students that sets forth the obligations of members of a dissertation committee or otherwise links appellant's allegations to the contractual relationship between the university and its students.   Given that the contract between the university and its students is comprised solely of the written materials provided to the students, appellant's contention that failure to carry out their duties as committee members cannot stand unless linked to the written policies of the university.

¶ 15   Next, appellant argues that the university breached its written contract by denying her a Ph.D. degree after her oral defense.   More specifically, appellant argues that "once [the committee] proceeded to take [appellant] to her oral defense, the

committee members *were bound* to give a passing grade on the written dissertation and permit any necessary revisions." Appellant's brief, at 15 (emphasis in original). Having read the same policies as quoted by appellant, we simply cannot agree. In support of her position, appellant cites the policies contained in "The Ph.D. Program, Department of Industrial Engineering, Lehigh University" which states:

> The Ph.D. candidate is required to write a dissertation prepared under the directions of a professor (usually) in his or her department. The paper must treat a topic related to the candidate's specialty in the major subject, show the results of original research, provide evidence of high scholarship, and make a significant contribution to the knowledge in the field.
>
> Upon approval of the advising professor and the dissertation committee, the dissertation is submitted to the Dean of the Graduate School for inspection at least six weeks before the degree is to be conferred. Upon its return, the student should distribute copies of the paper to the members of the dissertation committee for review and for suggestions for revision. The candidate then schedules a dissertation defense before the doctoral committee, additional faculty members the department may add to the examining committee, and the general public. The date of the examination is sent in advance to the Dean of the Graduate School.
>
> After the dissertation has been defended and revised accordingly, the student must submit the final draft of the paper to the Dean of the Graduate School for review by the university's Graduate Committee no later than two weeks before the degree is to be conferred.

The Ph.D. Program, Department of Industrial Engineering, Lehigh University, revised ⁹⁄₉₃, at 15 (subsection entitled Dissertation and Defense) (contained in the certified record).

¶ 16 Appellant argues that where the provisions state that "[u]pon approval of the advising professor and the dissertation committee, the dissertation is submitted . . . ," "approval" means that the committee members must decide that the written dissertation is of passing quality. We find that nothing contained in the plain meaning of these provisions justifies such an interpretation.

¶ 17 As quoted by appellant, the university policies require that the student submit her work to the dean of the Graduate School only after the dissertation committee grants the student permission, *not after receiving a passing grade*. Nothing in the sentence that starts "[u]pon approval" nor in the rest of the quoted provisions make any mention of grading, passing, failing, or otherwise making any final determination about the overall academic quality of the student's dissertation *prior to* allowing the student to submit the paper to the dean for inspection.

¶ 18 Instead, the quoted provision requires committee approval before the student submits the written work to the dean of the Graduate School for inspection. The provisions then specifically require that the student resubmit copies of the written work to all members of the committee for further review and suggestions for revision. If the provisions above required that committee members make a **final** determination about the academic quality of the work prior to the student's submission of the work to the dean, there would or should be no logical need for the student to resubmit the work for further review and suggestions.

¶ 19 Given the context of the provisions and the academic nature of the institution, appellant's tortured interpretation of the quoted provision runs contrary to notions of plain meaning, logic, and common sense. As a result, we find that as a matter of law, no reasonable jury could read the provisions of the university's contract with appellant to require that members of a dissertation committee vote

to pass the student's written dissertation prior to scheduling an oral defense of that work.

¶ 20 Finally, appellant argues that the university breached its contract in denying her the opportunity to revise and resubmit her written dissertation after the committee voted not to award her the degree. Again, appellant fails to show how the university breached any specific written contract provisions when it denied her request for further revision and reconsideration. As appellant states, "There is also no provision in the guidelines, or any precedent, contingency, or for that matter, likelihood, for a failing grade to be given in the manner it was done here." Appellant's brief, at 29. Since appellant cannot show where her contract with the university requires that she be given an opportunity to revise and resubmit her dissertation, we must find that, as a matter of law, she is not entitled to relief for breach of contract on those grounds.

### Claims of Arbitrary and Capricious Acts

¶ 21 Appellant also claims that the university and the members of the dissertation committee acted in an arbitrary or capricious manner when deciding not to award her a Ph.D. degree; thus, she is entitled to relief.

¶ 22 On the outset, we note that it is not the place of this Court to second-guess academic decisions and judgments made in colleges and universities of this Commonwealth. We are not now and will never be experts in each and every academic field open to scholarly pursuit. We are extremely cognizant that "[a]cademic freedom thrives not only on the independent and uninhibited exchange of ideas among teachers and students, but also, and somewhat inconsistently, on autonomous decisionmaking by the academy itself." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 n. 12, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). As a result, our Court abides by a general policy of noninterven-

tion in purely academic matters. *See Schulman v. Franklin and Marshall College*, 371 Pa.Super. 345, 538 A.2d 49, 52 (1988) (*en banc*) ("A college is a unique institution which, to the degree possible, must be self-governing and the courts should not become involved in that process unless the process itself has been found to be biased, prejudicial or lacking in due process.").

¶ 23 When presented with cases involving essentially academic decisions, such as the present case, our standard of review is well established. As the United States Supreme Court stated:

> When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Ewing*, 474 U.S. at 225, 106 S.Ct. 507 (citations and footnotes omitted). "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n. 6, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (Powell, J. concurring). Thus, we must determine whether "a decision to fail a student was rational and had a reasonable basis in fact in order to determine if impermissible factors were operative." *Moire v. Temple University School of Medicine*, 613 F.Supp. 1360, 1371 (E.D.Pa. 1985). More specifically, we must review the case in order to determine whether "there is no rational basis for the university's decision or [whether] the decision ... was motivated by bad faith or ill will unrelated to academic performance." *Stoller v. College of Medicine, The Milton S. Hershey Medical Center*, 562 F.Supp. 403, 412 (M.D.Pa.1983) (citations omitted).

¶ 24 Turning to the case at bar, we hold that the members of the dissertation committee who voted to deny appellant a Ph.D. degree did not act in an arbitrary or capricious manner. Having reviewed the evidence in the light most favorable to appellant as the non-moving party, we cannot find that the decision to fail appellant after her oral defense was either irrational or motivated by bad faith or ill will unrelated to her academic performance. Instead, it is clear to this Court that the committee members made their decisions based on purely academic reasoning—the kind that we find beyond our competence to question or challenge. As a result, we affirm the decision of the court below granting appellees' motion for summary judgment in this case. Order affirmed.