J-A28042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MEGAN THODE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NICHOLAS LADANY, AMANDA CARR AND LEHIGH UNIVERSITY | |
| Appellee | No. 29 EDA 2014 |

Appeal from the Judgment Entered November 25, 2013
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C0048CV2010-11525

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:               **FILED NOVEMBER 06, 2014**

Megan Thode, a student in a Master's Degree program at Lehigh University's College of Education ("University"), appeals from a judgment entered in favor of the University. We affirm.

Thode filed a complaint alleging claims against the University for, *inter alia*, breach of contract and discrimination under Title IX, 20 U.S.C. § 1681 *et seq*. The essence of her claim was that her grade of C+ in one of her courses not only was arbitrary and capricious but prevented her from becoming a licensed professional counselor. Thode subsequently withdrew all counts against the individual defendants and proceeded to trial solely against the University on two contract claims (counts I and VIII of the complaint) and one Title IX claim (count III of the complaint). At the

conclusion of a non-jury trial, the court entered a verdict in favor of the University on all claims.

Thode filed post-trial motions seeking judgment n.o.v. and/or a new trial, but the court denied her motions. She thereupon reduced the verdict to judgment and filed a timely appeal. Both Thode and the trial court complied with Pa.R.A.P. 1925[1].

In her first argument on appeal, Thode argues that the trial court erred in denying her motion for judgment n.o.v. on her breach of contract claim[2].

A motion for judgment n.o.v. is a post-trial motion in which the verdict loser requests the court to enter judgment in his favor. There are two bases on which the court can grant judgment n.o.v.:

---

[1] The issues in Thode's Rule 1925(b) statement are as follows:

1. Whether or not the plaintiff is entitled to judgment n.o.v. where the evidence viewed most favorably to the defendants establishes a "substantial deviation from the academic norm" by virtue of the "smoking gun" email, the zero in-class participation as the only zero for class participation in the history of Lehigh and the intentional delay by Carr/Ladany in handling the grievance in order to sabotage it?
2. Whether or not the plaintiff is entitled to a new trial based upon [an] erroneous evidentiary ruling?

[2] We add two points for the sake of clarity. First, Thode does not seek judgment n.o.v. on her Title IX claims. Second, Thode's appellate briefs do not differentiate between her contract claim in Count I of the complaint and her contract claim in Count VIII. Accordingly, we will treat these claims as a single claim for purposes of this appeal.

> [O]ne, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Polett v. Public Communications, Inc.*, 83 A.3d 205, 212 (Pa.Super.2013). In an appeal from the trial court's decision to deny judgment n.o.v.,

> we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Id*. at 211.

Before we can reach the merits of Thode's argument, however, we must first examine whether she has preserved for appeal her right to request judgment n.o.v. We conclude that she has not.

Following trial, a party may seek judgment n.o.v. by filing a timely motion for post-trial relief. Pa.R.Civ.P. 227.1(a)(2). The trial court cannot grant such relief, however, unless the party moved for a directed verdict at

the close of evidence via oral or written motion. Pa.R.Civ.P. 226(b); **Haan v. Wells**, -- A.3d --, 2014 WL 5018462, *6-7 (Pa.Super., October 8, 2014)[3]. The failure to request a directed verdict at the close of evidence constitutes a waiver of the party's right to seek judgment n.o.v. in post-trial motions or on appeal. **Id**.

Here, at the close of evidence, the court and counsel discussed the applicability of Title IX[4], but counsel for Thode did not request a directed verdict. Nor did counsel for Thode request a directed verdict during closing arguments[5]. Nor does the trial transcript or docket state that Thode filed a written motion for directed verdict. Consequently, Thode waived her right to file a post-trial motion seeking judgment n.o.v. and to appeal the denial of judgment n.o.v. to this Court[6].

_____

[3] The requirement to move for a directed verdict applies both in jury trials, **Frank v. Peckich**, 391 A.2d 624, 632 (Pa.1978), and non-jury trials, **Haan**, **supra**.

[4] N.T., 2/14/13, pp. 693-98.

[5] N.T., 2/14/13, pp. 698-722.

[6] Although the University did not raise the issue of waiver, we still have the authority to rule *sua sponte* that Thode waived her right to pursue judgment n.o.v. **Commonwealth v. Edmondson**, 718 A.2d 751, 752 n. 7 (Pa.1998) ("this Court can raise the issue of waiver *sua sponte*"); **see also Wirth v. Commonwealth**, 95 A.3d 822, 836-37 (Pa.2014) (Supreme Court held that it was proper for Commonwealth Court to hold *sua sponte* that appellant waived issue by failing to develop it properly in appellate brief; "because the burden rests with the appealing party to develop the argument sufficiently, an appellee's failure to advocate for waiver is of no moment"); **Commonwealth v. Triplett**, 381 A.2d 877, 881 (Pa.1977) (although neither party addressed issue of waiver as to appellant's allegation of trial court error, Supreme Court could raise waiver issue *sua sponte*).

Even if Thode preserved this issue for appeal, it is devoid of merit. Construed in the light most favorable to the University, the verdict winner, the evidence is as follows: Thode was a student in a Master's Degree program in Counseling and Human Services ("CHS") at the University's College of Education. She intended to obtain a Master's Degree in order to become a licensed professional counselor. The first year of the program is all coursework. The second year focuses mainly on fieldwork, in which students work with actual clients at a clinical site and apply the knowledge gained in their coursework.

The present dispute arose during Thode's second year in the program. Thode enrolled in the first semester of a mandatory two-semester "practicum" sequence comprised of a clinical placement in the community and a classroom component taught by appellee Carr, an adjunct faculty member and an advanced doctoral student[7]. Appellee Ladany, a tenured professor, oversaw the Master's Degree program as Program Coordinator[8].

The CHS Program Manual provides in relevant part:

> Each of the supervisors will evaluate the students' counseling-related competencies based on the same measure that attends to counseling skills, behavior in supervision, and professionalism. Any student whose counseling-related competencies are judged to be deficient may be required to complete additional coursework, counseling training, and/or supervision,

_____

[7] N.T., 2/12/13, pp. 328-29.
[8] N.T., 2/13/14, p. 436.

- 5 -

and/or or may not be permitted to continue into their next level of practicum training, or may not be permitted to complete their degree program. Deficiency is determined based on the evaluation measure where an appreciable discrepancy is identified among all supervisor evaluations[9].

In the fall of 2009, in addition to on-site supervision, students spent one hour per week in supervision with a doctoral student who simultaneously took a course (with Ladany) to learn supervision, and had a three-hour class session with the practicum instructor, Carr[10]. Each of the supervisors provided evaluations of the student from his/her own perspective, but the practicum instructor, Carr, was responsible for providing the overall assessment of each student's counseling skills and competency[11]. To successfully complete the practicum course, students were required to demonstrate that they could apply the knowledge gained in first-year coursework and show that they had the skills and competencies that counselors need to work effectively with individuals who have emotional or mental problems[12].

At the end of the Fall 2009 semester, Carr gave Thode a C+ grade in the practicum course and recommended to the CHS faculty, through Ladany,

---

[9] Program Manual For Counseling and Human Services ("Program Manual"), p. 23.
[10] N.T., 2/13/14, pp. 437-38; Program Manual, pp. 23-24.
[11] N.T., 2/13/14, pp. 506-09.
[12] Program Manual, pp. 21-25; N.T., 2/12/14, pp. 343-44.

that Thode needed remediation before moving ahead in the program[13]. The faculty concurred in that judgment[14]. This recommendation was consistent with the CHS Program Manual, which stated that a student must attain a grade of B or higher in the practicum, and show satisfactory levels of counseling-related competencies, to move forward[15].

The primary reason for Thode's overall grade of C+ was a zero grade in class participation for unprofessional behavior. On one occasion, Thode and Carr exchanged emails concerning Carr's advice that Thode refrain from showing up unannounced at potential clinical sites to try to meet the supervisor. Carr copied Ladany and others on the emails. Angered by Carr's decision to copy others, Thode stood up in class and twice yelled, directly to Carr: "This is shitty."[16] Thode's inappropriate language and demeanor caused Carr concern because it "was a professional issue."[17] Carr met with Thode to discuss Thode's outburst, but Thode alternately laughed inappropriately and then cried, and said that she would have to get a lawyer because she thought Carr had breached confidentiality by copying the email to others[18]. Carr requested that Thode reflect on this matter and respond in writing. Thode did not respond at all until Carr prompted her almost two

---

[13] N.T., 2/12/13, pp. 277-78; Defense Exhibit 24.
[14] N.T., 2/13/14, pp. 479-80, 517-18, 565-66.
[15] Program Manual, p. 23.
[16] N.T. 2/12/13, pp. 280-82.
[17] N.T. 2/12/13, p. 289.
[18] N.T. 2/12/13, pp. 346-49.

weeks later, and even then she did not respond substantively, but rather sent only a curt letter in which she apologized for her actions in class[19]. Thode later testified that she actually did not reflect on Carr's comments or on her own behavior[20].

Other incidents created additional concern about Thode's professionalism. When a student asked in class what Gail Lutsky (a site supervisor) said about Ladany, Thode shouted that Lutsky thinks he is "a pompous a-hole."[21] On another date, as Carr responded to another student's question, Thode yelled aloud, "I need an Advil," so that Carr had to stop her discussion with the other student to address Thode[22].

Thode's written work was deficient due to her failure to master important concepts such as culture and diversity factors[23]. Thode also failed to discuss these factors effectively in class. Carr testified that with regard to the only significant reading assignment during the semester, related to how culture and diversity factors affect counseling, Thode was the only student who appeared not to have read the article, and came to class unprepared to discuss it. When Carr expressed concern about that incident, particularly in

---

[19] Plaintiff's Exhibit 15; N.T. 160-61.
[20] N.T., 2/11/13, pp. 159-60.
[21] N.T., 2/12/13, pp. 287, 332-33.
[22] N.T., 2/12/13, p. 322.
[23] Case Presentations 3, 4.

light of Thode's difficulty integrating considerations of culture of diversity into her fieldwork, Thode had no response[24].

Finally, Thode behaved in a manner that reflected disdain for Carr's directions. Carr recommended to Thode in a November 24, 2009, memorandum that Thode discontinue seeing clients. Thode did not respond to her directly, as requested, but rather came to the next class and told another student across the room, in a voice loud enough for Carr to hear, that she had in fact obtained a new client[25].

At the end of the semester, Carr gave Thode a grade of C+. Thode filed grievances challenging her grade and the faculty's conclusion that she could not move forward in the program until she engaged in remediation. Professor Ladany (Program Coordinator), Professor DuPaul (Department Chair) and Professor Cates (Assistant Dean) all recommended denying Thode's grievances[26]. Dean Cates also participated in the two university-wide committees that handled the appeals of Thode's grievances, the first level called "SOGS" (Committee on the Standing of Graduate Students), and the second called "GRC" (Graduate Research Committee). Assistant Dean Cates described the diligence with which the committees approached Thode's case, including a request by the GRC for additional information from

---

[24] N.T., 2/12/13, p. 342.
[25] N.T., 2/12/13, pp. 296-98.
[26] Defense Exhibit 101.

the College of Education[27]. Both committees upheld the decision of the College of Education to deny Thode's grievances[28].

The relationship between a student and a private educational institution such as the University is contractual in nature. A student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract. **Swartley v. Hoffner**, 734 A.2d 915, 919 (Pa.Super.1999). A contract between a private institution and a student consists of "the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." **Id**. Said another way, the essence of the bargain between student and university is as follows: "A student has a reasonable expectation based on statements of policy by [the school] and the experience of former students that if he performs the required work in a satisfactory manner and pays his fees he will receive the degree he seeks." **Gati v. University of Pittsburgh of Com. System of Higher Education**, 91 A.3d 723, 731 (Pa.Super.2014) (citation omitted).

Schools have broad discretion to implement and enforce academic rules and regulations. **Id**. Courts "show great respect for the faculty's

---

[27] N.T., 2/13/14, pp. 636-649.
[28] Defense Exhibit 108 (noting "prolonged and thoughtful" review); Defense Exhibit 121.

professional judgment," **Swartley***, supra*, 734 A.2d at 921, and should not interfere in a school's academic decisionmaking absent an abuse of discretion. *Id*. Courts "may not override [the school's judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id*.

There exists some question "regarding the extent to which we will incorporate due process concepts into our analysis of a contractual dispute between a student and a private school." **Gati***, supra*, 91 A.3d at 732 n. 14. The **Gati** court did not find it necessary to resolve this question, *Id*., and neither do we, because the evidence demonstrates that appellees acted properly both under pure contract principles and due process precepts.

Based on this record, we conclude that the trial court properly denied judgment n.o.v. to Thode on her contract claim. Carr, in her role as Thode's practicum instructor, was responsible for evaluating whether Thode achieved the necessary skills and competencies to work independently with clients suffering from mental health issues. In the exercise of her professional judgment, Carr determined that Thode's demeanor and professionalism, as well as her mastery of core counseling concepts, were deficient. The College of Education and two university-wide committees concurred with Carr's judgment after reviewing Carr's evaluation of Thode's performance. Since private educational institutions must have a wide berth in their academic

decisionmaking, *Swartley*, *Gati*, *supra*, we decline to hold that Thode's grade was an abuse of discretion. The University furnished plausible reasons for Thode's grade of zero in class participation and her overall grade of C+. Thode behaved childishly and unprofessionally in class on multiple occasions, openly mocked Carr in the presence of another student, and failed to prepare at least one important assignment. While another instructor might have given a more lenient grade than zero for these infractions, we are reluctant to make a judicial determination to overturn Thode's grade. Courts lack the expertise to micromanage the complex and highly subjective endeavor of academic grading. Attempting to do so would invite an increase in difficult and time-consuming lawsuits by students who are disgruntled over grades, courses, teachers or other academic requirements[29].

_____

[29] We reject Thode's contention that the University's evaluations of her lack of maturity or self-insight are not true academic judgments and are thus subject to strict judicial review. The CHS Program Manual requires each instructor to "evaluate the students' counseling-related competencies based on the same measure that attends to counseling skills, behavior in supervision, and professionalism." Program Manual, p. 23. The manual thus makes each student's maturity and self-insight important factors in evaluating her entitlement to a Master's degree in counseling and human services.

We also conclude that Thode overstates the importance of an e-mail (that Thode calls a "smoking gun" memo) in which Carr states her belief that Thode's "long-standing mental health issues [are] negatively impacting her performance." We reiterate that the applicable standard of review requires us to construe all of the evidence in the light most favorable to the University. Viewed in this light, the evidence shows that Thode's classroom
*(Footnote Continued Next Page)*

- 12 -

Finally, assuming that due process standards apply, the record demonstrates that Thode received all the process to which she was due. Three professors in the College of Education reviewed her grievance, and two university-wide graduate committees did as well. The evidence shows that Thode's grievances were denied only after careful consideration. That is all that the process required. *Gati*, *supra*, 91 A.3d at 735 (university provided due process to student by "afford[ing] [him] notice of the charges against him and an opportunity to be heard").

Thode argues that the University "sabotaged" the grievance process by taking too long (the entire winter of 2010 and most of the spring) to decide her grievance. We can find nothing in the record setting a time limit for a decision on Thode's grievance. Moreover, the evidence, construed in the light most favorable to the University, demonstrates that Thode was responsible for much of the delay, first by failing to respond to Ladany's invitation for Thode to meet with Carr and then by refusing to participate in the grievance process unless the University met a series of "non-negotiable demands."[30] Nor does Thode demonstrate how she suffered prejudice from the delay.

*(Footnote Continued)* ───────────────

behavior, substandard preparation and disrespect for Carr justified her grade of zero for class participation.

[30] Defense Exhibits 61, 65, 69.

In her second argument on appeal, Thode asserts that the court erred in excluding an attachment to an e-mail which she claims would have established her right of action under Title IX. We disagree. Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Thode claims that she engaged in protected activity under Title IX by complaining about discrimination against gays, and that Carr discriminated against her for engaging in this activity. The e-mail in question was in Carr's possession and had anti-gay imagery. Thode wanted the e-mail admitted into evidence to show that Carr held an animus against gays, which in turn showed that Carr gave Thode a zero because Thode advocated gay rights. The court excluded the e-mail from evidence but permitted Thode to cross-examine Carr about the e-mail during trial.

The admission or exclusion of evidence is within a trial court's discretion, and will only be reversed for an abuse of that discretion. ***Keffer v. Bob Nolan's Auto Service, Inc.***, 59 A.3d 621, 631 (Pa. Super. 2012). Carr testified that she received the email from someone in a Bible study group following a session that she missed. Without reading the email or the attachment, she forwarded it to another woman who also missed the session. When Carr looked at the attachment for the first time during this

litigation, she saw negative imagery about gays that she does not condone. She testified that she would not have forwarded the email had she known what was in it[31]. We conclude that the court acted within its discretion by excluding the email and the offensive attachment itself from evidence, since Carr neither wrote nor agreed with the email attachment containing anti-gay imagery. We further find no prejudice from the exclusion of the email or attachment, since the court allowed Thode's counsel to cross-examine Carr about the email to explore Carr's views and any possible bias.

Judgment affirmed.

President Judge Gantman joins in the Memorandum.

Judge Wecht concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014

---

[31] N.T., 2/12/13, pp. 250-54.