NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3720
_____

AMER ALNAJAR, M.D.,
                              Appellant

v.

DREXEL UNIVERSITY COLLEGE OF MEDICINE;
HAHNEMANN UNIVERSITY HOSPITAL OFFICE OF
GRADUATE MEDICAL EDUCATION;
ALLISON H. FERRIS, M.D.;
RICHARD PALUZZI, M.D.;
JAY YANOFF, ED.D.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-04242)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 23, 2016

Before: McKEE, *Chief Judge*, HARDIMAN, and RENDELL, *Circuit Judges*.

(Filed: September 28, 2016)

_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

This appeal comes to us following a bench trial after which the District Court rejected Dr. Amer Alnajar's claims against Drexel University College of Medicine, Dr. Allison Ferris, and Dr. Richard Paluzzi. Dr. Alnajar argues that the District Court misinterpreted his contract with Drexel and erred by admitting evidence of his work history and lack of professionalism. Because we find neither argument persuasive, we will affirm.

I

In June 2012, Dr. Alnajar began a three-year residency program in internal medicine offered by Drexel in cooperation with Hahnemann University Hospital. The relationship between Dr. Alnajar and Drexel/Hahnemann was governed by a contract consisting of three documents: a "House Staff Manual," a "House Staff Employment Agreement," and a "Resident Responsibilities" form. *See Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999) (finding that the contract between a school and student includes all written guidelines, policies, and procedures "distributed to the student over the course of their enrollment").

In accordance with state law, these documents required each resident to pass successive "steps" of the United States Medical Licensing Examination (USMLE). At issue

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

in this case is whether Dr. Alnajar took and passed Step 3 of the USMLE in time to guarantee his position under the contract's terms.

Dr. Alnajar did not sit for the Step 3 exam prior to the December 31, 2013 deadline established by the contract. Consequently, Drexel issued a letter on February 12, 2014 giving Dr. Alnajar 120 days' notice that his position in the residency program would not be renewed for the 2014–2015 academic year "due to non-passage of USMLE Step 3," App. 386, as required by the House Staff Manual's GME Policy 12 (13). Shortly thereafter, however, Dr. Alnajar took and passed the Step 3 exam and informed his superiors of that fact in April 2014. In response, Drexel followed its customary practice and treated him as a new applicant. Drexel selected another doctor to fill the position.

II

Dr. Alnajar filed suit, and the primary issue at his bench trial was whether Drexel had a contractual right not to renew his position for failing to sit for (and pass) the Step 3 exam before December 31, 2013. Dr. Alnajar urges that, because he passed the test, there was no basis for not renewing him based on his not sitting for the exam prior to December 31, and the contract was at least ambiguous as to Drexel's right to not renew him on that basis. Prior to trial, the District Court rejected Drexel's summary judgment motion on that point because it agreed with Dr. Alnajar that the contract was ambiguous.

After hearing the evidence at trial, however, the District Court resolved the ambiguity in favor of Drexel for three principal reasons. First, the Court found it clear "that

3

there is a right of non-renewal that exists under the contract." App. 1042. Second, the Court credited the testimony of Dr. Paluzzi that the December 'sit for' date was important because Drexel had to be able to exercise its right not to retain Dr. Alnajar at least 120 days prior to June 30 in order to ensure a fully staffed and properly administered program. Finally, the evidence showed that Dr. Paluzzi "clearly communicated" that residents were required to sit for the Step 3 examination prior to December 31 of their second year. *Id.*

As for the conduct of the trial, Dr. Alnajar had filed a pretrial motion *in limine* to preclude the admission of evidence at trial related to his work history and professionalism as irrelevant. The District Court did not rule on the motion prior to trial, but allowed the challenged evidence as relevant to Drexel's defense that it had a nondiscriminatory basis for declining to readmit Dr. Alnajar.

On October 8, after a three-day trial, the District Court entered judgment in favor of Drexel, Dr. Ferris, and Dr. Paluzzi on all counts. Dr. Alnajar appealed.[1]

### III

Dr. Alnajar's claim that the contract was unambiguous is a nonstarter because he made the opposite argument in the District Court. In response to Drexel's motion for summary judgment, Dr. Alnajar asserted that the contract was ambiguous and the District Court agreed. *See, e.g.*, App. 1042 ("I agree with the plaintiff that there is an ambiguity

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction to review that judgment under 28 U.S.C. § 1291.

4

that exists in the contract"). "When a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession." *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992).

Alternatively, Dr. Alnajar contends that the District Court misconstrued the contract's ambiguity in favor of its drafter. This argument is a red herring because the factfinder is to resolve ambiguities against the drafter only "in the absence of relevant extrinsic evidence." *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1166 (3d Cir. 1996).[2] Here, the District Court rightly considered extrinsic evidence and determined that it supported Drexel's position. Specifically, the Court credited the testimony of Dr. Paluzzi that a right of non-renewal had been exercised in the past, that the mandatory nature of the December 31 deadline had been clearly communicated to residents, and that Drexel's ability to opt for non-renewal was crucial to ensure a full residency staff and proper coordination with Hahnemann. The only argument Dr. Alnajar makes in reply is that Drexel permitted some residents who took and passed the Step 3 exam during the spring of their PGY-2 year to remain in the program. But all this shows is that Drexel treated its option to

---

[2] We review a District Court's factual findings made in its interpretation of an ambiguous contract for clear error. *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 n.2 (3d Cir. 1993); *see also Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999) ("If the court determines that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact for the trier of fact to resolve . . . .").

dismiss a non-compliant resident as just that—an *option*. It does not undermine Dr.

Paluzzi's testimony regarding the meaning of the contract itself.

## IV[3]

Dr. Alnajar also challenges the District Court's admission of evidence related to his

work history and lack of professionalism. He argues that such evidence was irrelevant,

prejudicial, and confusing.

During trial, the District Court ruled that evidence of Dr. Alnajar's work history and

lack of professionalism—which included multiple incidents of absenteeism and dereliction

of duty—was relevant to establish that Drexel had a nondiscriminatory reason for refusing

to readmit him.[4] Dr. Alnajar faults this reasoning as "purely hypothetical" with "no basis in

fact," since Drexel admitted that its decision not to renew his position was "based solely on

his having not secured a passing score to the Step 3 exam by December 31, 2013." Alnajar

Br. 10.

The defect in Dr. Alnajar's argument inheres in a distinction the District Court found

critical: non-renewal versus non-readmission. Even if Dr. Alnajar is correct that Drexel's

decision to exercise its option to not automatically *renew* his residency was based entirely

---

[3] "We review pre-trial and trial court rulings concerning the admission of evidence for an abuse of discretion." *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994).

[4] Under the Americans with Disabilities Act, after the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (internal quotation marks and citation omitted).

on his failure to timely pass the Step 3 exam, the Court found that the decision not to *readmit* Dr. Alnajar was another matter. As the Court noted, it was "entirely appropriate for Drexel to consider [evidence of Dr. Alnajar's work history and lack of professionalism]" at a time when he was "in effect coming as a supplicant to the program and asking for consideration." App. 1043. Thus, the Court did not err in finding this evidence relevant. *See* Fed. R. Evid. 401.

Dr. Alnajar also claims that this evidence proved confusing and prejudicial. We disagree. As an initial matter, we presume the Court considered the evidence for its admissible purpose. *See Williams v. Illinois*, 132 S. Ct. 2221, 2235 (2012) ("When the judge sits as the trier of fact, it is presumed that [he] . . . will not rely on [the evidence] for any improper purpose."). The findings of the able trial judge with which Dr. Alnajar takes issue—that he was "struck negatively" by certain aspects of Alnajar's work ethic and attitude, and that Drexel acted lawfully when it used that information to "exercise its option" to admit another candidate, Alnajar Br. 11—were well within the District Court's discretion as finder of fact.

V

For the reasons stated, we will affirm the judgment of the District Court.